[EDITORS' NOTE: THE DIAGRAM IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 20 N.C. 151.]
On the trial at Rutherford on the last circuit, before his Honor, (191)Judge Dick, the lessor of the plaintiff produced in evidence a deed for a tract of land lying on the northeast side of Main Broad River, and calling for a beginning in John Bradley's line, which is at A in the diagram, thence to the south branch of the river at B, thence down said river along a marked line to a willow bush, opposite the mouth of the Dead River at E, thence crossing the river to the mouth of the said Dead River, thence with the meanders of the said Dead River, etc. The lessor of the plaintiff then proved that when he purchased the land, in the year 1820, a line was run and marked on the south bank of the river from B, along the river bank to a point opposite the mouth of the Dead River; that since that time the river had encroached on the north bank by freshets, and that by accumulation of leaves, soil, etc., deposited during those freshets, the south bank of the river had been extended, so that the bed of the river had been changed. One of the witnesses, who was present at the survey in 1820, stated that he believed the south bank of the river was then at the line B, C, D, E; and another witness, who was also present at that survey, stated that he thought the south bank was at that time as far out at least as the line B, C, F, G. The surveyor who ran both those lines after the suit was brought stated that he could *Page 152 
find no marked trees on either of them. The defendant was proved to be in possession of the land lying north of the line B, C, F, G, and between that line and the river.
The defendant showed title to the land on the south side of the river, and his deed called for the plaintiff's line on the bank of the river, and he contended that he had a right to go to the south bank of the river, wheresoever that might be. His Honor charged the jury that "if they believed from the testimony that the line was run and marked in 1820 as alleged by the lessor of the plaintiff, and that said line was either at the line B, C, D, E, or the line B, C, F, G, and they further believed the defendant was in possession north of the line B, C, F, G, the plaintiff was entitled to recover." The lessor of the plaintiff had a verdict and judgment, and the defendant appealed.
(192) The court is of opinion that there was no such error in the instruction to the jury as to warrant a reversal of this judgment. We do not indeed hold that as the deed to the lessor of the plaintiff called for a marked line that this line, wherever established, was the boundary of that deed. We agree with the counsel for the defendant that as the deed contained a double description "along the river" and "a marked line," the natural object was the more important description, controlled the marked line, and was in law the true boundary. But it does not follow that because the river has deserted the bed in which it flowed when that deed was executed that the boundary of the land of the lessor of the plaintiff has shifted with it. Admit that such would have been the consequence if the river had receded from its southern bank by small and almost imperceptible gradations, a point upon which no opinion is intended to be expressed or intimated, this consequence does not follow from changes by sudden and violent floods. Such is stated to have been the fact in this case. The change of the bed of the river was made by freshets, which we must understand to be excessive floods, producing violent and visible changes; and the charge of the judge is not to be treated as an abstract proposition, but as a practical instruction to aid the jury in applying the law to the case before them.
PER CURIAM. Judgment affirmed.
Cited: Wilhelm v. Burleyson, 106 N.C. 387; Brown v. House, 118 N.C. 881. *Page 153 
(193)