Buse v. Russell.

BUSE v. RUSSELL *et al.*, *Appellants.*

1. **Land Title** : ACCRETIONS. Where the intermediate space between a survey on the main land of the Missouri river and a surveyed island at the times of the surveys consisted of a slough, and since then the slough has so filled up as to connect the island and the main land and to make them one continuous tract of land, the adjacent owners of the island and the survey are entitled to the accretions to their respective lands, but if the slough simply filled up from the bottom, or by deposits within its bed, and the accretions did not form on the one side or the other, then the center of the slough as it was before the water left it is the boundary between the survey and the island.

2. **Accretions.** Where the shore lines of two tracts of land, divided by a water course, receive accretions until they come together, the line of contact will then be the division line.

3. ————. If the slough gradually filled up as the water receded, the same principle is applied and the new land belongs to the riparian owner from whose shore the water receded, and it is immaterial whether the water was navigable in the common law sense or general acceptation of the term, or was a non-navigable stream.

4. **Land Title:** ISLAND : ALLUVION. If the island was washed away, in whole or in part, after it was surveyed and then reformed on the same bed, the owner of it, as it was before it was so washed, would be entitled to it, but if it was washed away and the land sought to be recovered was made by deposits to and against the survey of the main land, then such deposits became the property of the owner of the survey.

VOL. 86—14

5.  **Verdict.** A verdict for plaintiff in ejectment is sufficiently definite in its description of the premises, if the boundary lines as fixed by the verdict can be traced thereon.

6.  **Practice in Supreme Court.** Excess in the amount of a judgment may be obviated by a *remittitur* in the Supreme Court.

*Appeal from Franklin Circuit Court.*—HON. A. J. SEAY, Judge.

AFFIRMED.

*Crews & Booth* for appellants.

(1) The third instruction given by the court for plaintiff was erroneous. There was no evidence tending to show that said arm of the river or slough simply filled from the bottom without forming accretions on either side. The words "simply filled up from the bottom or by deposits within the bed of the slough," as used in said instruction, were calculated to lead the jury to suppose that all land formed within the original limits of the slough and resting on that bottom were to be divided equally between the island and survey. (2) Plaintiff's fourth instruction was also erroneous. There was no evidence tending to show that Island Seventy-three did wash entirely away or that an island reformed on the bed of the river where an island once existed. (3) The court erred in giving the fifth instruction asked by plaintiff; because the technical term "accretions," as used there, was not explained in that or any other instruction. The jury was left to determine for itself, what, within the meaning of that instruction, would be accretions to Island Seventy-three, and what to said survey. (4) The verdict is insufficient to support a judgment. It is merely a finding for plaintiff "to the center of the first depression next to survey 1922." This does not conform to the pleadings. (5) The verdict was against the evidence. (6) The court erred in rendering

judgment for plaintiff for recovery of all the land lying to the north of the railroad, when the verdict did not find for plaintiff as to all of said lands, and there was no evidence of any pretense of right in plaintiff to about fifteen acres of said land, lying between said railroad and the original river line of survey 1922. The judgment was in excess of both verdict and evidence.

*L. F. Parker* for respondent.

The instructions given for plaintiff are strictly in accordance with the law governing the rights of owners of lands along the Missouri River, as laid down in *Benson v. Morrow et al.*, 61 Mo. 345. The term accretion, which is criticized at such great length by counsel for defendants, is the very word used in the instructions approved in that case. And an instruction giving the technical definition of that term was condemned. The giving of the instruction asked by defendants, though erroneous in being too favorable to them, is not an error of which they can complain. The point that the judgment includes a small strip of land between the railroad and the slough, or first depression, which strip the evidence tends to show may belong to survey number 1922, has no merit, as this error, if error it was, has been cured by a *remittitur* in this court. That such a course is the proper remedy, see *McQuiddy v. Ware*, 67 Mo. 64.

BLACK, J.—This was ejectment for Island Seventy-three in the Missouri river. The island was surveyed and numbered when the public lands were surveyed. It was patented to the state as swamp land, and by the state to the county of Franklin, and by the latter sold to plaintiff. The plat of the public surveys, certified from the surveyor general's office, shows that the island was, at the date of the survey, located near the left bank of the Missouri river. This is one of a number of islands,

surveyed and unsurveyed, in the same locality. The main channel of the river, it would seem, is, and always has been, to the north and east of these islands. On the main land nearest to the island, is located survey 1922. Between this island and the survey, the plat shows an arm of the river, or slough as it is called. At the present time and since 1868, or thereabouts, the island and survey have been connected by land. In going from the old survey to the present river bank, there are two depressions in the soil. The first begins with well defined banks, at or near the old river line of the survey, and is several yards in width. Then passing over higher land the next depression is reached, and again higher land to the river bank. The first of these depressions is clearly the place of the old slough. The form of the island is easily traceable by the survey.

The court, at the request of the plaintiff, gave the following instructions:

"3. If the jury believe from the evidence that a slough, or arm of the Missouri river run between Island Seventy-three and survey 1922, at the time of making the United States survey, and that since that time the same has been filled up so as to connect the island with the main land, and make the island and survey one continuous tract of land, then the adjacent owners of Island Seventy-three and survey 1922, are entitled to the accretions to their respective lands, but if the slough simply filled up from the bottom, or by deposits within the bed of said slough, and said accretions did not form on the one side or the other, then the center of the slough as it was before the water deserted it, is the boundary between said survey and said island."

"4. That although the jury may believe that Island Seventy-three, section six, township forty-four, range one, west, at any time washed away entirely, or in part, after the same was surveyed and patented by the United States government, yet if they further find that the land

in controversy is a reformation of said island on the bed of the river where such island formerly existed, then plaintiff is entitled to recover in this action, if it be shown that the defendant unlawfully detained the same."

"5. The court instructs the jury that if they believe from the evidence that the land and premises described in plaintiff's petition, and of which the defendants were in possession at the time of the institution of this suit were, and are not within the boundary line of survey 1922, nor are any part thereof, nor are any accretion thereto, but that they are within the original boundary line of Island Seventy-three, in Missouri river and the accretions thereto, and that defendants held and hold the possession wrongfully from the plaintiff, then they will find for the plaintiff."

At the request of the defendant, the court instructed the jury as follows:

" The court instructs the jury that if they find from the evidence in this cause, that Island Number Seventy-three was washed away by the waters of the Missouri river, and that the land claimed by plaintiff as Island Number Seventy-three, is land made by deposits of the said river against and to survey 1922, then they must find the issues in this cause for the defendants."

The jury found for the plaintiff, and fixed the boundary line between the parties at the center of the first depression next to survey 1922.

1. The defendants first contend there is no evidence upon which to base the third instruction. They offered evidence to the effect that in 1855 steamboats occasionally ran through the slough; that there was a strong current in it from 1857 to 1864, which continuously cut away the island, and land or sand-bars formed, from the survey towards the river, until, in 1865, the whole island had been thus washed away, and the new formations of land took its place. One witness lived upon the land

from 1869 to 1876, during which time a part of it was cleared. Other witnesses say a part of the island, called a tow head, always remained.

Plaintiff introduced evidence to the effect, that, prior to the flood of 1844, the island was covered with timber, which was cut off about that date; that the channel of the slough thus filled up so that no steamboats ran through it after that date; that the slough was then no more than fifty or sixty yards wide, and gradually filled up to dry land; and that stumps were found on the island in 1876, of considerable size, in their natural place in the earth. The jurors had a right to take into consideration all these physical evidences, as well as the bare assertion of the witnesses. There was not only sufficient evidence upon which to base the instruction, but it is difficult to see how the jury could do otherwise than find the facts hypothecated for the plaintiff.

From the plat, survey 1922 appears to have been bounded by the river. It being thus bounded, under the well settled law, both the survey and the island became entitled to the alluvion, or deposits made to the banks, and the respective owners of the island and survey acquired the title to such new-made land by accretion, as incident to their ownership of the main land so bounded on the river. *Smith v. Schools*, 30 Mo. 280; *Schools v. Risley's Heirs*, 40 Mo. 356; *Benson v. Morrow et al.*, 61 Mo. 345. It must follow that if the shore lines of two bodies of land, divided by a water course, receive accretions until they come together, the line of contact will be the division line. If, however, the slough gradually filled up, as the waters receded therefrom, the same principle is applied, and the land belongs to the riparian owner from whose shore the water receded, and for this purpose it makes no difference whether the water was navigable in the common law sense, or the general acceptation of the expression, or was a non-navigable stream. *Benson v. Morrow et al.*, 61 Mo. 345; *Warren*

*v. Chambers*, 25 Ark. 120 ; 2 Black, 261.   We see no error in this instruction.

2.   The further contention is, that the fourth instruction given on the prayer of plaintiff, and the one given at the request of the defendants, are inconsistent. If we bring them together, we find they assert these propositions, viz :   If the island washed away, in whole or in part, after it was surveyed, and then reformed on the same bed, plaintiff is entitled to recover ;   but if it washed away and the land in dispute was made by deposits to, and against the survey, then such deposits became the property of the defendants.   It is perfectly clear that the two states of facts are entirely different and involve different propositions of law, for if the island disappeared and then reformed again on the same bed, it could not in any sense be regarded as accretion to the survey, but if it was washed away, and accretions to the survey, or deposits against the same, continued from time to time, until the former location of the island was covered therewith, then arose the state of facts alone, upon which the defendants acquired any right to the land in dispute.   The defendants cannot complain of the instruction given at their request, for it was a most liberal statement of the law in their favor.

It is true, the plaintiff must recover on the strength of his own title, and that he must show title to the land in question.   The instructions must be read in the light of the cause as it stood before the jury on all the evidence.   What might be the law if the island had washed away wholly, so as to become a part of the navigable portion of the river, and so remained for any considerable length of time, we are not called upon to determine by any of the facts in this case, nor do the instructions hypothecate any such state of facts.   It cannot be claimed, by any fair intendment, from the evidence, that any considerable portion of the island proper ever became a part of the navigable channel of the river, or

that the island ever became wholly extinct. The most that can be said, or inferred in this behalf, is, that after the flood of 1844, and during a period of years, the island was from time to time covered with sloughs, so that in process of time the whole was under water, different portions of it, however, first here and then there, remaining above the surface of the water.

Plaintiff produced his title papers and identified the location of his grant. The defendant can defeat the recovery only by showing that there was, at all times, a well defined channel and body of water next to the survey, and that the new formed land was by way of accretions to the bank of the survey. This they have failed to do with favorable instructions.

3. The claim that the judgment was excessive has been obviated by the *remittitur* entered in this court. Nor is there any merit in the point that the verdict is indefinite. The boundary lines fixed by the verdict, can be easily enough ascertained on the ground.

The judgment of the circuit court is affirmed. All concur.