Rees v. McDaniel.

## REES *et al.* v. McDANIEL, *Appellant.*

| 115 | 145 |
| 117 | 48 |

| 115 | 145 |
| 120 | 552 |

| 115 | 145 |
| 125 | 655 |

| 115 | 145 |
| 129 | 341 |
| 131 | 681 |

| 115 | 145 |
| 132 | 139 |
| 132 | 271 |
| 134 | 591 |

| 115 | 145 |
| 137 | 288 |

| 115 | 145 |
| 147 | 556 |

| 115 | 145 |
| 84a | 132 |
| 84a | 134 |

| 115 | 145 |
| 169 | 6127 |

1. **Land:** SUIT TO QUIET TITLE: JURISDICTION.   Notice of suit and description of the premises *held* sufficient, in a proceeding under Revised Statutes, 1889, section 2092, to quiet title to land, to give the court jurisdiction of the parties and the subject-matter of the action.

2. ———: ———: ESTOPPEL.   A judgment against defendant therein estops him from claiming title to the land.

3. **Judgment:** COLLATERAL ATTACK.   A judgment is not subject to collateral attack because of mere irregularities in the proceedings.

4. **Land:** RIVER BOUNDARY: IMPERCEPTIBLE CHANGE OF COURSE.   Where a river is the boundary between two states, it will continue such as it runs although it may imperceptibly change its course from natural causes.

5. ———: ———: AVULSION.   Where however the river suddenly changes its course or deserts its original channel the boundary remains in the middle of the old channel.

6. ———: MISSOURI RIVER: RIPARIAN OWNER.   The owner of land abutting on the Missouri river owns only to the water's edge or bank of the river.

*Appeal from Platte Circuit Court.*—HON. JAMES M. SANDUSKY, Judge.

REVERSED AND REMANDED.

*Porter & Woodson* for appellant.

(1) The proceedings to quiet title, the record of which was read in evidence, are void.   *First.* Because there was no service of notice as required by law.

Revised Statutes, 1889, sec. 2092. *Second.* Because there is no description of the land sought to be affected by the proceedings. (2) The owner of an island in the Missouri river which washes away is entitled to the land which re-forms on the original site; and if any part of the island remains he is entitled to all accretions thereto. *Buse v. Russell*, 86 Mo. 209. And, if entirely submerged and the surface washed away, when the water disappears from the land from any cause, the proprietorship is restored to the original owner. *Mulray v. Norton*, 100 N. Y. 425; Gould on Waters [2 Ed.] sec. 158, cases cited; *St. Louis v. Rutz*, 138 U. S. 245. (3) Changes in the boundary river between states after their admission into the union do not affect their dominion and jurisdiction. Gould on Waters [2 Ed.] sec. 158; *Indiana v. Kentucky*, 136 U. S. 479; *State v. Young*, 46 Vt. 565; *St. Louis v. Rutz*, 138 U. S. 245. (4) Land sued for in ejectment should in the petition and the judgment so identify it that the officers charged with the execution of a writ of possession can locate the land by the description therein contained. *Livingston Co. v. Morris*, 71 Mo. 603.

*A. D. Burnes* and *Jas. W. Coburn* for respondents.

(1) By the judgment in the action to quiet title to the lands in suit appellant was estopped to claim them. Revised Statutes, 1889, sec. 2092. (2) The description of the lands in said proceeding was sufficient. *Livingston Co. v. Morris*, 71 Mo. 603; *McPike v. Aullman*, 53 Mo. 551; *Webster v. Blount*, 39 Mo. 500. (3) The middle of the channel of the Missouri river is the boundary line between the states of Missouri and Kansas. *Railroad v. Devereux*, 41 Fed. Rep. 14. (4) Where the middle of a stream is the boundary between states or private land owners, that boundary

follows any changes in the stream which are due to a gradual accretion or degradation of its banks. *Nebraska v. Iowa*, 143 U. S. 359. (5) The rule that owners of land are entitled to additions to their land formed by accretions is applicable to the Missouri river, notwithstanding the peculiar character of that stream and of the soil through which it flows, whereby changes in its banks are great and rapid. *Jeffries v. Omaha Land Co.*, 10 U. S. Sup. Ct. Rep. 518. (6) The law of accretion is founded upon at least two good reasons: *First.* The riparian owner is entitled to his water front; and, *second*, as he must bear the loss of his soil that is washed away, he is entitled to whatever may be added to it. Accretions extend to the water. Gould on Waters [2 Ed.] sec. 155, p. 283. (7) There is no difference between soil gained by accretion and that uncovered by reliction. Gould on Waters [2 Ed.] sec. 155, p. 283; *Nebraska v. Iowa*, 143 U. S. 359. Appellant's land was not submerged but was entirely washed away. "If an island in a stream be wholly washed away, the *filum aquæ* may run along where there had been this solid land." 3 Washburn on Real Property [4 Ed.] p. 58. "Land gradually encroached upon by navigable water ceases to belong to the former owner." Gould on Waters [1 Ed.] sec. 155, p. 283. "If a river running between two lordships by degrees gains upon the one and thereby leaves the other dry, the owner who thus loses his ground thus imperceptibly has no remedy." 2 Blackstone's Commentaries [Wendell's Ed.] p. 262. (8) The existence of a lagoon between plaintiff's property and the beach constituted no obstruction to his proprietorship of the beach, however created, within the original boundaries of his possessions, and the principle applicable to the apportionment of lands formed by accretion among the owners of contiguous uplands is applicable to the beach

formed by reliction in front of his property. *Mulvey v. Norton*, 3 N. E. Rep. 581. A sand bar in the Missouri river, divided from the main land by a slough twenty-eight feet wide, and which at high water was entirely submerged, belonged to the riparian owner, although the acts of congress made the river a public highway at the place in question. *Railroad v. Schurmeier*, 7 Wall. 272.

BURGESS, J.—This is a suit in ejectment for the possession of the accretions made by the Missouri river to fractional section 24, township 54, range 37, in Platte county, Missouri, owned by plaintiffs. The answer is a general denial.

It was admitted on trial that the plaintiffs were the owners of fractional section 24. It was also admitted that the land sued for was part of an island which was in the state of Kansas when that state was admitted into the union, which washed away and reappeared, and that it was the fractional northeast quarter of section 6, township 7, range 22, in Atchison county, that state. That this island was known as Cow island, to which defendants had an unbroken chain of title.

The evidence was very conflicting but tended to show that the island had entirely washed away or at least all of it except about one and one half acres at the northwest corner of the island, and that the land in controversy was remade land, but before it was reinstated by the action of the river the channel of the river which ran between section 24 and the island changed and ran where it does now on the Kansas side of the land sued for, and that by gradual accretion to plaintiffs' land, the Missouri shore, it extended entirely over what had been Cow island before it was remade. Defendant was in possession.

The cause was tried by the court sitting as a jury, and the finding and judgment were for the plaintiffs for possession. The usual motion for new trial was filed and overruled and the case is here by appeal. There was no motion in arrest.

At the April term 1890 of the circuit court of Platte county, Missouri, plaintiffs filed their petition under section 2092, Revised Statutes of 1889, against the defendants to quiet their title to the land in controversy, and thereupon an order was duly made that notice be given defendant as required by said section. In obedience to this order the clerk of the court issued an ordinary summons to the defendant returnable to the next term, containing in addition to the ordinary commands the following words, to-wit: "And show cause why you should not bring an action to try your alleged title to the land described in the petition." This summons was duly served, and at the following October term of said court defendant failing to answer, or show cause why he should not bring this suit to try his title, judgment was rendered that he be forever barred and estopped from having or claiming any right or title in said land adverse to plaintiffs.

The proceedings were read in evidence on the trial of this cause over the objections of defendant's counsel, who contend that they are absolutely void, because the order of the court was not as required by statute, that *notice* be given, while the clerk issued a summons, and because of the indefinite description of the land. The object of this statute was to notify the defendant that proceedings had been commenced against him and requiring him to bring suit to try his title, and, while the proceedings were not perhaps in strict conformity with section 2092, *supra* they were substantially sufficient to apprise defendant of the purpose and nature thereof, which would seem to be all that was

necessary. If the defendant after being thus served saw proper to fold his arms and stand heedlesely by and suffer judgment to be rendered against him he is forever estopped thereby from claiming title to the premises. The defendant could not have been misled by the summons, and as the court had jurisdiction of the parties and of the subject-matter of controversy its proceedings were not void however irregular they may have been and can not now be called in question in this collateral way.

II. The description in the petition is as follows: "The accretion made by the Missouri river to section 24, which would be upon an extension of the line of the congressional survey the southeast quarter of section 24 and the northeast quarter of section 25, etc." There is no such indefiniteness or uncertainty in the description of the land as would invalidate the proceedings. *Livingston Co. v. Morris*, 71 Mo. 603. We are therefore of the opinion that the defendant is estopped by the proceedings and judgment from claiming any right or title in the land sued for adverse to the rights of plaintiffs.

III. Although defendant was the owner of the island, yet, if in 1874 and 1875 it gradually washed away and did not subsequently and until about the year 1884 re-form, as the water receded therefrom, and if before it was re-formed the gradual and imperceptible accretions to plaintiffs' land extended over and included the *situs* where the island was, then, even though defendant was not estopped by virtue of the proceedings to quiet the title hereinbefore referred to, plaintiff became the owner and entitled to the possession thereof. *Buse v. Russell*, 86 Mo. 209.

But these were questions of fact to be passed upon by the court, sitting as a jury, under proper instructions. It is not contended by counsel for defendant

that the instructions given by the court do not present correctly the law of the case, nor that there was not evidence upon which to base them, and it is not our province to determine whether the finding of the court was sustained by the evidence or not.

IV. The evidence shows very conclusively that prior to and during the year 1867 the main bed of the river was between plaintiff's land and the defendant's, and, while defendant's land was gradually cut away by the action of the waters after that time, and the main bed of the river changed south of it where it was in 1881, that during all this time accretions, gradual and imperceptible, had been formed to the land of plaintiffs until it had extended entirely over the island, but that during the high waters in 1881 the channel of the river by avulsion changed from where it was at that time to the south and west towards the Kansas shore where it has ever since remained.

The channel of the old river bed of 1881 was at the time of the commencement of this suit and is now according to the weight of authority the line between the states of Missouri and Kansas, and consequently the land in controversy is within this state and within the jurisdiction of the circuit court. In the case of *State of Nebraska v. State of Iowa*, 12 Sup. Ct. Rep. 396; 143 U. S. Reports, 359, the supreme court of the United States held, that when the middle of a stream is the boundary between two states or private landowners, that boundary follows any changes of the stream which are due to a gradual accretion or degradation of its banks, but when the change is of a sudden and rapid character, such as occurs when a river forms a new course by cutting through a bend, the boundary does not follow the change but remains in the middle of the old channel. 2 Blackstone's Commentaries, 262; Angell on Watercourses, sec. 60; *Trustees v. Dickinson*, 9 Cush.

544; *Buttenuth v. Bridge Co.*, 123 Ill. 535; 17 N. E. Rep. 439; *Railroad v. Devereux*, 41 Fed. Rep. 14; *Hagan v. Campbell*, 8 Port. (Ala.) 9; *Murry v. Sermon*, 1 Hawks, 56.

In the case of *St. Louis v. Rutz*, 138 U. S. 245, the supreme court of the United States says: "It is laid down, however, by all the authorities, that, if the bed of the stream changes imperceptibly by the gradual washing away of the banks, the line of the land bordering on it changes with it; but that, if the change is by reason of a freshet, and occurs suddenly, the line remains as it was originally." This principle is recognized by the supreme court of Illinois in *Buttenuth v. Bridge Co.*, 123 Ill. 535–546, in these words: "The law as stated by law writers, and in the adjudged cases, seems to be, that where a river is declared to be the boundary between states, although it may change imperceptibly from natural causes, the river as it runs continues to be the boundary. But if the river should suddenly change its course or desert the original channel the rule of law is, the boundary remains in the middle of the deserted river bed."

Avulsion does not change the boundary but it remains in the center of the old channel. 8 Opinions of Attorney General, United States, 175, 177.

V. The judgment of the court was that plaintiffs have and recover all the land of which they were in possession and described in the petition up to the middle of the old channel of the river as it was in 1881, before its abandonment by the river at that time. Plaintiffs were only entitled to recover up to the bank or water's edge and not to the middle of the channel. They as riparian owners could not have acquired the river bed by accretion, and not only this, but its change was sudden and by avulsion, and their title in the first place as acquired from the government was only to the water's

edge or bank of the river as it was at that time. This court as far back as 1875, in the case of *Benson v. Morrow*, 61 Mo. 345, held that the proprietor of land on the bank of the Missouri river does not own to the center of the stream but only to the water's edge. This decision has been followed and approved in the following cases: *Lamme v. Buse*, 70 Mo. 463; *Campbell v. Gas Light Company*, 84 Mo. 352; *Buse v. Russell*, 86 Mo. 215; *St. Louis v. Lemp*, 93 Mo. 477; *Meyers v. St. Louis*, 8 Mo. App. 266; *Naylor v. Cox*, 114 Mo. 232, and has become a rule of property; and, whatever the law may be in other jurisdictions, this rule has been too long adhered to and the rights of property acquired by reason of the rule too firmly fixed thereby to be at this late day departed from or overruled.

The judgment will be reversed and the cause remanded with directions to the circuit court to order a survey so as to ascertain where the line of the river bank was at the time of the sudden change of the river in 1881, in so far as it touches or runs through the land in controversy, and that after having ascertained where said bank was at the time last aforesaid, that it enter up judgment for plaintiff for the possession of all the land sued for up to said line. All concur.