MINTON v. STEELE *et al.*, *Appellants.*

Division One, November 26, 1894.

1. **Land and Land Titles:** RIPARIAN OWNER: ACCRETIONS. Land formed upon the bank of the Missouri river, by gradual alluvial deposit, belongs to the owner of the riparian property upon which it forms as an accretion.

2. ———: ———: ———: LAND WASHED AWAY IN PART AND REFORMED. Where land is patented to a riparian owner by the United States government, and part of the land is washed away, but is afterward restored by accretion so as to include the lines described in the original patent, the riparian owner acquires title to the limits, at least, of those lines.

3. ———: ———: ———: DEPOSITS FROM BOTTOM. Whether accretions to riparian real estate form by deposits from the bottom of the stream so as ultimately to blend with the bank by the recession of the waters, or first form on the sides of the bank and extend into the stream, they alike constitute part of the shore land which they join.

4. **Tenants in Common:** EJECTMENT. One tenant in common may maintain ejectment against his cotenant in Missouri.

5. ———: APPELLATE PRACTICE: ESTOPPEL. Where one party to an action denies all right of the adverse party to possession of a piece of land, and the case is tried on that theory, it is too late for the former to claim on appeal that they were both entitled to possession as tenants in common.

6. ———: ———: CONDUCT OF PARTY IN COURT: OUSTER. The conduct of a case in court may furnish evidence of an ouster of one tenant in common by another.

7. **Appellate Practice:** ESTOPPEL. Parties to a civil action are bound on appeal by the positions they take in the trial court.

8. ———: ———: EXCESSIVE VERDICT: PRACTICE. The objection that a verdict in ejectment is for a greater interest in the land than plaintiff is entitled to is in substance nothing more than that it is excessive. That objection must be made in the trial court, else it is not subject to review on appeal.

9. **Ejectment:** PRACTICE: CREDIBILITY AND WEIGHT OF EVIDENCE. The questions of the weight and credibility of the testimony are for the trial court and jury in an action of ejectment.

125 181
147 440
79a 356

125 181
a155 669

125 181
163 486

125 181
164 372

125 181
93a 8176

125 181
94a 7409

125 181,
178 7 91

*Appeal from Holt Circuit Court.*—HON. C. A. ANTHONY, Judge.

AFFIRMED.

*L. R. Knowles* and *Kelley & Kelley* for appellants.

(1) The court erred in refusing the instruction in the nature of a demurrer to the evidence asked by the defendants at the close of plaintiff's testimony in chief, and also in refusing a similar instruction at the close of all the evidence. The plaintiff in his petition claimed the land sued for as accretion. The evidence not only fails to show that said land was accretion to his land, but it shows, as do the physical facts, that it was not accretion to his land, and that he has no right or title to it which would support ejectment. (2) The court erred in giving plaintiff's second instruction. It declared, as a matter of law, that plaintiff was entitled to the land formed in the channel of the river back to the line of the original survey or original bank (land which had been cut away by the encroachment of the river to the distance of nearly a quarter of a mile), and that he would be entitled to accretions formed against said land the same as if it had never been cut away, although a slough might remain against the bank of said river when it ceased the washing away of plaintiff's land. This declaration of law is in conflict with the principle announced in a number of recent cases. *Naylor v. Cox*, 114 Mo. 232; *Rees v. McDaniel*, 115 Mo. 145; *Cooley v. Golden*, 117 Mo. 33. (3) The court erred in refusing instruction number 7 asked by the defendants. The evidence showed that the river cut into plaintiff's land over fifty rods and washed it away and that it afterwards suddenly changed its course, abandoned that channel and estab-

lished a new one a mile and a half distant, and left a slough or channel next to the plaintiff's land, and that the abandoned channel filled up from the bottom by washing from rain fall and sediment deposited by back water, etc. Plaintiff, therefore, had no right to the land so formed in said slough or on the west side of it to the islands. His boundary line did not follow the shifting of the channel. *Haslett v. Railroad*, 34 N. E. Rep. (Ind.) 845; *St. Louis v. Rutz*, 138 U. S. 226; *Nebraska v. Iowa*, 143 U. S. 359; 145 U. S. 519; *Steele v. Sanchez*, 33 N. W. Rep. (Iowa) 336; Mills on Eminent Domain, sec. 82. The plaintiff can not recover in ejectment land belonging to the state. *Buras v. Brien*, 7 S. Rep. (La.) 632. Any separation of his land from the alluvion by the land of another defeats the claim. The bed of the river belonged to the state. *Re State Reservation Com'rs*, 37 Hun (N. Y.), 537. (4) The surveyor had no authority or power to allot the land in the bend of the river. He attempted to divide it on the plan adopted by some court in dividing alluvion on non-navigable rivers. 1 Am. and Eng. Encyclopedia of Law, 137, n. 4; *Watson v. Horne*, 13 Atl. Rep. (N. H.) 789; *Hubbuard v. Manwell*, 14 Atl. Rep. (Vt.) 693. It should have been divided upon equitable principles by some judicial proceeding. Any other division amounts to nothing; binds nobody. *Pearcy v. Bybee*, 26 Pac. Rep. (Ore.) 233. The division of such land must be governed by the special circumstances of each particular case, and the instructions must adapt the rule to the conditions of the case at bar. *Elgin v. Beckwith*, 10 N. E. Rep. (Ill.) 558. (5) The court erred in giving the instructions for plaintiff and of its own motion by assuming that the allotment made by the surveyor might be correct and that the plaintiff might recover the portion allotted to him. (6) The court erred in overruling the motion

for a new trial.    The plaintiff's land only went to the margin of the river, as it ran around past his land. The evidence shows that it suddenly changed its course and abandoned that channel, and that the land in question was formed in the bend against islands and sand bars, formed between the shoots or channels of the river.   He was not entitled to any part of said land.    The case was tried on a wrong theory, the instructions given were wrong, and the verdict is against the law and the evidence, is not sustained by the evidence, and is for the wrong party.  *Benson v. Morrow,* 61 Mo. 347; *Naylor v. Cox,* 114 Mo. 232; *Rees v. McDaniel,* 115 Mo. 145.   The plaintiff was not entitled to the land as accretion because it was not made to his land.   *Buse v. Russell,* 86 Mo. 211; *Naylor v. Cox,* 114 Mo. 232.   When the river, as in this case, entirely forsakes its channel and forms a new one the boundary lines remain unchanged.   Ang. on Water Courses, sec. 59; *Nebraska v. Iowa,* 143 U. S. 359; *Rees v. McDaniel,* !supra, and cases cited; *Cooley v. Golden,* 117 Mo. 33.   The land in question may belong to the state.   *Barney v. Keokuk,* 94 U. S. 324; *Packer v. Bird,* 137 U. S. 666; *St. Louis v. Rutz,* 11 Sup. Ct. Rep. 337.   The plaintiff must recover, if at all, on the strength of his own title and not on the weakness of defendant's title.   *Duncan v. Able,* 99 Mo. 188; *Marion v. Elliott,* 99 Mo. 616.   (7) The judgment will be reversed when the plaintiff recovers more land than he was entitled to.   *Mourning v. Company,* 99 Mo. 320.   The plaintiff was not entitled to any land, and he recovered two hundred and eighty-nine and eighty hundredths acres, of which defendant was in the peaceable possession.   (8) The evidence shows that defendant owned the land in section 18 on the north side of the channel of the river, and that the extension of his lines south through said bend would give him

the land he had in his possession. We contend that he had a right to thus extend his lines. Whether he had or not, he had possession of the land lying between his extended lines, and his possession entitled him to hold it until a better claim or title should be established. The plaintiff could not possibly have any better title to it than has the defendant Hinkle. (9) The Missouri river where it passes the land in dispute is not useful to the riparian owner for purpose of navigation, so that wharfage or landing are not valuable incidents to the land. The accretion or made land in the bend is only useful for agricultural purposes and should be divided in such way as to do justice to all riparian owners. Therefore the first method suggested in defendant's case should be adopted in the division of this land, if it should be held to be accretion at all. It should be divided under the direction of the court. It is settled that one tenant in common can not eject his cotenant from any particular part of the common tract. See *Deerfield v. Arms,* 17 Pick.; *Wonson v. Wonson,* 14 Allen, 85; *Waller v. Railroad,* 3 Cush. 25; *Kehr v. Snyder,* 114 Ill. 313.

*H. T. Alkire* and *T. C. Dungan* for respondent.

(1) The court did not err in refusing defendants' instructions in the nature of a demurrer to the evidence, or in refusing a similar instruction at the close of the evidence. *Smith v. Railroad,* 23 S. W. Rep. 785; 2 Thompson on Trials, pp. 1598–1600, secs. 2245, 2246; *Cook v. Railroad,* 63 Mo. 397; *Charles v. Patch,* 87 Mo. 350; *Moody v. Deutsch,* 85 Mo. 243. The questions of the burden of proof and preponderance of evidence were properly submitted in instruction number 6 given of the court's own motion. (2) The court did not err in giving plaintiff's second instruction.

*Naylor v. Cox,* 114 Mo. 232; *Rees v. McDaniel,* 115 Mo. 145; *Cooley v. Golden,* 117 Mo. 33; *Benson v. Morrow,* 61 Mo. 353. (3) Defendants' instruction number 7 was rightly refused. It ignored the question of fact as to in what way or manner the channel changed, whether gradually or suddenly and entirely. *Cooley v. Golden, supra; Rees v. McDaniel, supra; Nebraska v. Iowa,* 143 U. S. 359; *Buse v. Russell,* 86 Mo. 214; *Wells v. Bailey,* 10 Atl. Rep. 565. (4) In no event could the court instruct the jury in this case by giving them a rule to divide an accretion in common; upon issues properly framed the question would be exclusively for the chancellor. *Hardin v. Jordan,* 140 U. S. 371. (5) The court in the instructions did not assume that the lands in question might be accretions to plaintiff's lands, nor that an allotment of lands in the bend of the river were properly made, nor that plaintiff was entitled to recover any allotment made to him. (6) The rapidity with which the river receded or made the deposit by accretion to plaintiff's land would not alter the case. *Benson v. Morrow,* 61 Mo. 353; *Buse v. Russell,* 86 Mo. 214; *Wells v. Bailey,* 10 Atl. Rep. 565; *Mulvy v. Norton,* 3 S. E. Rep. 585. (7) Plaintiff did not recover more land than he was entitled to. (8) The case was fairly tried and submitted. The instructions fully covered the issues made by the pleadings, and presented fairly, the case, under the evidence for both parties. See authorities above cited. *Wells v. Bailey,* 10 Atl. Rep. (Conn.) 565. (9) The fact that a small portion of the land sued for, was in the possession of plaintiff, did not prejudice the defendant, as he made no claim to it. It would only be important as to the question of damages, and rents and profits, and in this case the damages were only nominal, and said damages, and rents and profits were, after verdict, all remitted by plaintiff, and judgment rendered for

possession only. Sedgwick & Waite on Trial of Title to Land, sec. 501, page 316; *Adm'rs of Russell v. Maloney,* 39 Vt. 579; *Coleman v. Doe d. Henderson,* 2 Scam. (Ill.) 251; *McCullough v. Phœnix Ins. Co.,* 21 S. W. Rep. (Mo.) 207. (10) If the Missouri river, from 1875 to 1877, when it left its channel on the eastern side, at the time it ceased to cut into plaintiff's land, receded rapidly, or abandoned its said channel suddenly, and left a broad, flat bar, between said plaintiff's land and the new channel formed, which, was not above the ordinary stage of high water, and was bare at low water, then such bar would be the bed of the river; and if, afterwards, by the action of the waters of the said river, at different times, up to, and including, the years 1881 and 1883, the said bar was raised higher, and formed land above ordinary high water, by deposit of dirt, debris and sand thereon, and against the shore land, of said plaintiff, then such formation would be accretion to plaintiff's land, no matter how rapidly, or suddenly, same was formed. *Railroad v. Ramsey,* 13 S. W. Rep. (Ark.) 931; *Cooley v. Golden, supra.*

BARCLAY, J.—Plaintiff sued the original defendants in ejectment, December 20, 1890, to recover possession of a piece of land in Holt county.

The petition follows the statutory form (R. S. 1889, sec. 4631); but proceeds further to show the nature of plaintiff's claim to possession. It alleges that plaintiff owns a tract of land adjoining that in controversy. It particularly describes both tracts, and charges that plaintiff's claim to possession of the latter tract is based on the fact that it is an accretion to the former, which originally abutted upon the Missouri river.

The defendants answered by a general denial.

The cause was tried before Judge ANTHONY with the aid of a jury.

On the plaintiff's side, testimony was given tending to prove the following facts:

Plaintiff is the owner of land near the Missouri river in Holt county. The tract fronted on the shore for a considerable distance at the time the title passed from the United States government, by patent in 1849. The official survey, on which the entry of the first purchaser was based, represented the river as bounding the land on the west. So it then did, according to all accounts. The river pursued a semicircular course at that point, the effect of which was to give the river line the general shape of a crescent, with the points turned westward. The main land now owned by plaintiff was then near the center of that particular bend or inlet of the stream.

The land of the defendant, Mr. Hinckle, was further north, near the top of the bend.

Since the original survey and settlement of the several tracts now owned by plaintiff and Mr. Hinckle respectively, a large formation of land has taken place in front of them. The old river bend is now completely filled with land, comprising a tract of several hundred acres, extending from the old river line westward to the present bank, more than a mile distant.

The river now follows (or, rather, did follow at the last reports in this record) an irregular, but somewhat semicircular course. The outer side of the curve was, at last accounts, toward the Kansas side.

The territory involved in this case may be generally described as a strip fronting for some sixteen hundred fee ton the river, and running thence a little northeast to the undisputed Minton estate on the old river bank. The strip is located near the center of a larger tract, all of which is said to have been formed by alluvial deposits in the old river bend.

Minton v. Steele.

The defendant, Mr. Hinckle, admitted possession of the greater part of the tract, but denied plaintiff's right thereto.

At the outset of the case, Mr. Steele, a tenant of Mr. Hinckle, was also a defendant; but as he moved away pending the proceedings, the cause was dismissed as to him in the circuit court.

The defendant offered evidence tending to negative plaintiff's case at several points, and also intended to support a claim for the same property as an accretion upon the defendant's estate, which lay near the head of the original bend.

Under instructions to be again mentioned, the jury found for plaintiff for the strip of land sued for, and for damages and monthly rents.  The latter items of the verdict were, however, remitted by the plaintiff, leaving the recovery and judgment standing for possession of the property only, and for costs.

From that judgment defendant appealed, after following the usual course to obtain a review.

The defendant's counsel have advanced several assignments of error.

1.   It is first urged that plaintiff should have been forced to a nonsuit by the instruction, which defendant asked, declaring that plaintiff had failed to make out a case.   This contention is founded on the idea that the evidence shows that the new river bank at the place in question, was not formed by gradual accretion.

It is claimed by defendant that a great part of the tract in suit consists of a large sand bar or island in the river, formed while one channel yet ran in front of plaintiff's land and separated it from the island or bar; and that afterward, when the channel filled and was replaced by solid ground, the river shifted to the western channel, suddenly.

The questions, which might arise on the facts just stated, we need not go into at this time. They certainly do not require discussion in connection with defendant's instruction in the nature of a demurrer to the evidence. For, on the plaintiff's side, there was abundant testimony that the disputed land was formed by gradual and impreceptible alluvial deposit upon plaintiff's original property; if so, he had a proprietary right to the possession, as hereafter more fully indicated.

Where there is substantial evidence to support the plaintiff's case, the questions of its credibility and weight are for the trial jury and court, in an action of ejectment, such as that now in hand.

2.    Defendant complains of the second instruction given for plaintiff, in which, among other things, it is said that if a large part of plaintiff's original tract on the river bank, as described on the government survey, was first cut away toward the east, and if the jury find "that lands were made back to and against said lands where such other lands were washed away, then, although a slough may remain against the bank of said river where the washing away of said land ceased, still the plaintiff would be entitled to all his old original lines and corners; and if accretions were by said river formed against said old lines, after the same were so made back to his said land, then the plaintiff would be entitled to all said accretions, the same as though the original lines of his said lands had never been washed away or changed by said river," etc.

None of the evidence tended to show that plaintiff's whole estate on the river bank had been washed away by the movement of the river eastward. Only part of his land was thus swallowed up. Plaintiff still remained proprietor of a large tract on the bank. So that when, afterward, the river receded, and in course

of time restored what it had formerly taken, to such
an extent as to replace the entire land within the lines
of the original government survey, and of the descrip-
tion in the patent to plaintiff's predecessors in title,
plaintiff was entitled to reclaim the increase, to the
extent of his original possession, even though a slough
remained for a time on a part of the land, within the
limits of the plaintiff's former estate.

Whether that claim should properly rest upon the
force of the original title, or be referred to the general
law of accretion, we are not required to investigate.
Under other instructions the jury found as a fact that
the accretions in the old bend did not begin at the
defendant's land on the north, and extend in a south-
easterly course until opposite plaintiff's property on the
main land.

Other instructions presented squarely the issue
whether the accretion in suit was formed upon, and
extended from, the land of plaintiff or from that of
defendant; and on that issue the jury found · for the
plaintiff.

There was evidence to support that finding, and we
discover no error prejudicial to defendant in the lan-
guage of the second instruction, above quoted, as
applied to the case before the court.

3.   Defendant also complains of the refusal of the
second request for an instruction, which was this:

"2.   If the jury believe from the evidence that, at
the time of the change of the channel of the Missouri
river from the land claimed by plaintiff, there was a
slough left or formed, running between plaintiff's said
lands claimed by him, and the lands occupied by the
defendants, and that there is now no water in the same,
except surface water running therein or back waters
from the Missouri river at the time of high water, and
that said slough was not filled up by accretions on

either side but has been filled up from the bottom in whole or in part by deposits therein made by the flow of the surface water and back water from the Missouri river, then the plaintiff can not recover and the jury in that case should find for the defendants."

The only idea embodied in this instruction, not otherwise given to the jury, is that plaintiff could not recover if the slough, which at one time existed on plaintiff's land, was filled up from the bottom by deposits, caused by the action of surface water and "backwater" from the Missouri river.

We think that idea does not embody a sound legal conception.

If the slough was gradually filled up with alluvial deposits, the fact that they did not first make land on the sides of the slough is unimportant. If the deposits ultimately reached the surface and blended with the adjacent land of the plaintiff by the action or recession of the waters, the accretion so formed became part of the plaintiff's domain.

The instruction certainly does not offer to submit the issue whether or not the plaintiff, as owner of the river bank, could acquire title by accretion to any sand bar or island, separated from the east bank by any portion of the river.

No question was raised at the trial as to the rights of anyone in possession of any such island or bar, as against the owners of land on the original river shore. Each party to the action claimed the disputed ground as an accretion to his own property on the shore, and the jury, under instructions, asked by defendants as well as by the plaintiff, found that the accretion in dispute had formed upon the plaintiff's shore, and not upon the defendant's.

The second refused instruction merely presented the question as to the mode of the formation of the

accretion. On that point it did not accurately state the law, and was, hence, properly denied.

4. It is further claimed by the defendant that plaintiff was not entitled to recover the strip of land sued for, because, at most, he and defendant were equitably interested in the whole accretion formed in the old bend of the river, and should have shared therein ratably.

Under the evidence, instruction, and the judgment, plaintiff recovered possession of a long strip reaching from his old estate on the original main shore, to the present bank of the river. He stated a claim to that particular piece, and the basis of his claim, with great particularity in his petition.

Defendant denied totally plaintiff's right to possession.

If, as defendant now intimates, plaintiff and defendant were entitled to share in common the ownership of any part of the disputed accretion, defendant should have raised that question in some way in the trial court. He did not do so.

Even if plaintiff was entitled to possession only as tenant in common he might maintain ejectment under the law of this state. (R. S. 1889, sec. 4634.)

And the denial of the plaintiff's right to the possession by the answer, and the persistent opposition of defendant before suit and at all times in the circuit court, to any recognition or acknowledgment of a right in plaintiff to possession of the land, would tend to show an ouster of plaintiff as cotenant, if he was such. *Falconer v. Roberts* (1886), 88 Mo. 574.

Had the question of a common interest been raised in the trial court, we might review the circuit rulings upon it. But it was not raised, so far as the record shows.

Vol. 125—13

The land claimed by plaintiff consisted of a strip connecting the old estate with the existing river bank. The strip had the same proportionate frontage on the present river as had the original riparian property on the old bank, as indicated in the official survey which was the basis of the United States patent under which plaintiff holds title to the original shore. Plaintiff claimed the strip as an accretion to his undisputed land on the ancient bank. Defendant denied that claim, and by his proof sought to show that the land was an accretion to his (defendant's) property, fronting on the north side of the old bend, or was an accretion to an island which had once formed in the bend.

The defendant also insisted that the land in question was raised above the water by a sudden change of the stream, and hence could not be treated as an accretion at all.

The various lines of defense pursued at the trial can, perhaps, best be shortly indicated by the following instructions, which the court gave for defendant at the trial, viz.:

"1. The plaintiff in this case claims title to the lands charged to be in the possession of the defendants, by accretions formed to his said lands fronting on the former or old bank of the Missouri river, that is, lands accreted or formed to his said lands by the washing or receding of the Missouri river. The court, therefore, instructs the jury that before they can find for the plaintiff they must believe from the evidence that the land occupied by the defendants was land made or accreted to said deeded land, claimed by plaintiff and not other or different lands, and, unless the jury so find, they will find for the defendants.

"2. The term 'accretions,' as used in the instructions on both sides in this case, means land gradually formed to the shore land by the washing of the Mis-

souri river, and such made land is termed 'alluvion' or 'accretions' and becomes a part of, and belongs to the owner of, the land to which it is formed.

"3.  If the jury believe from the evidence that the lands of which the defendants are in possession were formed or accreted by deposits caused by the washing or receding of the Missouri river, to other lands than those claimed by the plaintiff, then the plaintiff can not recover and the jury must return a verdict for the defendant.

"4.  If the jury believe from the evidence that the Missouri river began to recede from defendant's lands or other lands than those claimed by the plaintiff, and formed accretions thereto, and that the river gradually receded eastward, or in a southeasterly course, and gradually extended said made or accreted lands from said lands, in said direction, to or beyond the prolongation of the east line of the defendant's said land, then the plaintiff can not recover, and the jury should find for the defendants.

"5.  Before the plaintiff can recover in this case the jury must believe, from the evidence, that the lands possessed by the defendants are accretions to plaintiff's land; that the Missouri river began to recede from plaintiff's land gradually and form accretions thereto, and that the river gradually receded in a westerly direction, and gradually extended said accretions from plaintiff's said lands, in said direction, to and over the lands possessed by the defendants or some part thereof, and, unless the jury so find, they will find for the defendants, and in no case has the plaintiff any right to recover or claim any land beyond the line of his accretions.

"6.  The court instructs the jury that the burden of proof is upon the plaintiff to establish his right to recover in this case by a preponderance of the testi-

mony, and, unless the jury so find, your verdict must be for the defendants."

Under these instructions the jury found for plaintiff, with damages, etc. But to avoid some questions (which were supposed otherwise to arise on the record) the plaintiff, we repeat, remitted that part of the verdict which gave him damages, rents and profits. The judgment then followed for the possession only, and costs.

According to the issue presented sharply by defendant's fifth instruction, above quoted, as well as in other less distinct forms by other instructions, the jury must have found that the land in suit was an accretion upon plaintiff's riparian property, and not upon that of the defendant.

Parties to a civil action are ordinarily held bound by the positions they take in the trial court.

If defendant intended to claim that in no event could plaintiff recover more than a moiety of the accretion, he should have put that proposition into some sort of form in the circuit court.

The suggestion now advanced that the plaintiff should, in no event, be allowed to recover more than a part, or undivided share of the property, comes too late. At best it amounts to this: that plaintiff, having a right to some interest or estate in the disputed land, has recovered a larger share than he is justly entitled to, under the facts. Such an objection, in the state of the record now exhibited, amounts to nothing more than that the verdict is excessive. That objection should have been made in the circuit court to be available here for review. *Schmitz v. Railroad* (1893), 119 Mo. 256.

Having discussed all of the defendant's assignments of error that appear to call for remark, and finding

none of them well taken, we affirm the judgment. BLACK, C. J., and MACFARLANE, J., concur. Judge BRACE concurs in the result.