SIDDALL v. HUDSON. (No. 7505.)

(Court of Civil Appeals of Texas. Galveston. Feb. 4, 1918. On Motion for Rehearing, March 13, 1918.)

1. MANDAMUS ⬌151(1)—PROCEEDING AGAINST COUNTY SURVEYOR TO COMPEL SURVEY — NECESSARY PARTIES.

The owners of three surveys abutting on a river bed were necessary parties to a mandamus proceeding against the county surveyor to compel him to survey the river bed as appropriated to the public free school fund, that plaintiff might purchase it, such proceeding necessarily involving the determination of whether or not the river bed, lying between the owners of the surveys, was public land and subject as such to survey and purchase since, on an application for mandamus, all known parties in interest should be summoned to come in and defend, and third parties claiming an adverse interest, so that a conflict exists in the subject-matter, should be joined as respondents without regard to the validity of their claims.

2. NAVIGABLE WATERS ⬌44(3)—ABANDONED BED OF NAVIGABLE STREAM.

Where a navigable river gradually left its old bed and formed a new one, the abandoned bed was not state land; when the water left the old channel, such channel ceased to be the bed of a navigable stream, lost any character of public property it might have had before, and became an accretion or reliction to the land on either side; the new boundary line being the center of the channel before the water left it.

On Motion for Rehearing.

3. NAVIGABLE WATERS ⬌45 — VIOLENT CHANGES IN COURSES OF RIVERS — EFFECT ON ABUTTING PROPERTY.

Where changes in the courses of rivers occur by the sudden and violent avulsive method, the property lines of abutting or riparian owners remain the same as before.

Appeal from District Court, Grimes County; S. W. Dean, Judge.

Suit for mandamus by R. M. Hudson against George E. Siddall. From judgment for plaintiff, respondent appeals. Reversed and rendered.

H. L. Lewis, of Navasota, for appellant. W. W. Meachum, of Anderson, L. C. Kemp, of Houston, and Pat N. Fahey, of Navasota, for appellee.

GRAVES, J. Appellee, plaintiff below, alleging that he was desirous of purchasing a certain tract or parcel of land known and designated as unsurveyed or scrap land, under article 5422, chapter 9, title 79, of the Revised Statutes of Texas of 1911, pages 1126–1147, presented his application for a survey of the land to the appellant, defendant below, who at the time was the county surveyor of Grimes county, Tex. The application was for a survey of unsurveyed land appropriated to the public free school fund under chapter 11 (1st called Sess. 26th Leg.) Act February 23, 1900, and described it as being situated in Grimes county, Tex., about 21 miles southwest from the county site, and bounded as follows:

"Being what is known as old river bed as the Brazos river ran while Texas was a part of the state of Coahuila and Texas, and after Texas was declared a republic in 1836. The said river having subsequently changed its course and leaving in the channel of the old river its bed, being on an average 236 varas wide and extending from its junction with the present channel of the Brazos river, at its northwest corner in a circuitous route for a distance of about 1,920 varas, containing 148 acres of land, to its southwest and where it joins the present channel of the Brazos river, which river was, at the dates aforesaid, a navigable stream along its present channel."

The application further alleged that the applicant desired the land surveyed with the intention of buying it for himself, and that he was not acting in collusion with, or attempting to acquire it for another person or corporation; that the appellant refused to file his application, or to survey the land, or to make field notes thereof. Appellee prayed for a writ of mandamus, commanding the appellant to file and record the application, to survey the land, and to file the application and field notes in the general land office at Austin. After demurrers, general and special, appellant answered that he had refused to make the requested survey for two reasons: (1) Upon investigation of the field notes of the land located in that particular section of the county, he concluded that the land in question was included within the field notes of the Jared E. Groce three-league grant; (2) he was unable to mark out and define old river bed, because its water lines could not be traced upon the ground, nor could its banks at the ends for some hundreds of yards, although he could survey the banks for the rest of their extent. The case was tried before the court, sitting without a jury, and resulted in a judgment for appellee, awarding him the writ of mandamus substantially as prayed for. From that judgment this appeal is prosecuted.

The essential facts were practically undisputed, and may be thus summarized: The Brazos river was admittedly classed as a navigable stream. The Jared E. Groce three-league survey was granted to him by the Mexican government July 29, 1824, and extended along the east bank of the river, following its meanders, from the lower corner of the Isaac Jackson league to the upper corner of the Thomas Stevens league; right opposite to the Groce on the west side of the river, and likewise, following its meanders up that side, lay the Wm. Gates and M. Bird surveys, which came together there, and which had been granted to them, respectively, by the same government on July 16, 1824. At the time these three grants were thus titled in 1824, the Brazos river was flowing through the so-called old river bed and so continued until 1832, when, during an overflow, it cut across a small horseshoe bend at that point, and shifted its channel further to the west, where it has since remained, thus leaving as its abandoned bed a semicircular neck of land 236 varas wide by about 1,920 varas long inclosed between the Jared E. Groce on its east side and the Wm. Gates and M. Bird grants on its west side. Such was the location and description of the strip of land it was thus sought to have so surveyed as state land. None of the owners of any of the three surveys which incased it upon all sides were made parties to the suit for mandamus, but the writ was applied for and issued by the trial court against the surveyor alone.

The theory upon which this action rested was that the so-called old river acquired the character of state land while it constituted the main channel of the Brazos, a navigable stream, and never lost that character after it became, through the shifting of the channel towards the west, the abandoned bed of such stream.

We think the judgment awarding mandamus cannot stand for two reasons: (1) The owners of the abutting lands necessarily affected by it were not parties to the action; (2) the abandoned bed of what had formerly been a navigable river, under the facts here shown, was not state land.

[1] It has been a number of times held by our Supreme Court that upon an application for mandamus, all known parties at interest should be summoned to come in and defend their interests, and that third persons claiming an adverse interest, or that a conflict exists, in the subject-matter must be joined as respondents, without regard to the validity of their claims. Winder v. Williams, 23 Tex. 601, 604; Cullem v. Latimer, 4 Tex. 329, 334; Watkins v. Kirchain, 10 Tex. 375, 381; Crumley v. McKinney (Sup.) 9 S. W. 157; Smith v. Power, 2 Tex. 57; Commissioner v. Smith, 5 Tex. 471; Tabor v. Commissioner, 29 Tex. 508; Chappell v. Rogan, 94 Tex. 492, 62 S. W. 539; Texas Mex. R. Co. v. Jarvis, 80 Tex. 456, 467, 15 S. W. 1089.

We think the principle applied in those cases equally pertinent here, and that the owners of the three surveys abutting on old river bed in the manner above shown were essential parties to a proceeding which necessarily involved the determination of whether or not the sinuous strip of land so lying between them was public land, and subject as such to survey and purchase. This conclusion alone would require a reversal.

[2] Under the broader question of whether or not the abandoned bed of a once navigable stream is state land, no authority has been furnished us, although the appellee insists that such is undoubtedly its character. With that conclusion, however, we cannot agree, but think that when the water left the old channel it ceased to be the bed of a navigable stream, lost any character of public property it might have before had, and took on the nature of an accretion or reliction to the land upon either side; the new boundary line being the center of the channel before the water left it. No Texas appellate court seems to have decided this precise question, but the general doctrine is announced by the Supreme Court of Kansas in Fowler v. Wood, 73 Kan. 547, 85 Pac. 776, 6 L. R. A. (N. S.), at page 178, 117 Am. St. Rep. 534, as follows:

"If the space between the mainland and an island be reduced to a slough, which fills up in such a manner that the two bodies of land join, the respective owners will be entitled to the accretions to their shores. If the slough fills up from the bottom, and the accretions do not begin at the sides, the boundary is the center of the slough, as it was before the water left it. Buse v. Russell, 86 Mo. 209; Minton v. Steele, 125 Mo. 181, 28 S. W. 746. If an island be separated from the mainland by the channel of a river which becomes dry the same rule obtains."

See, also, 29 Cyc., Navigable Waters, page 352e, and authorities there cited.

We think that rule applicable here, and that, under the undisputed facts no title being in the state, no vacancy could exist. The judgment must therefore not only be reversed, but here rendered for appellant; and it is so ordered.

In the view we have taken of this case, since the matters upon which the appeal has been determined raise a fundamental question and should be considered whether properly assigned or not, it would get nowhere to accede to appellee's request and pass upon the sufficiency of appellant's assignments of error; but this opportunity is embraced to again suggest to the bar that this court's time and thought is much too often unnecessarily directed toward disposing of mere procedural matters relating to the process of bringing causes from the trial courts to its attention, and request is made that its earnest efforts to promptly dispatch the heavy volume of business always before it be aided by such careful observance of the rules by litigants as will prevent the recurrence of these questions here.

Reversed and rendered.

## On Motion for Rehearing.

In a very ably written motion for rehearing appellee strongly contends that this court erred in holding that the land he sought to have surveyed, that is, the abandoned bed of a navigable river, was not state land, but took on the nature of an accretion or reliction to the lands bordering the old bed upon both sides.

[3] In support of this position, after assuming that the brief statement in our former opinion of the circumstances under which the Brazos changed its course in 1832 constituted avulsion rather than the slower and more gradual result known as accretion or reliction, many widely selected cases are cited, applying the well-settled general rule that where changes in the course of rivers occur by the sudden and violent avulsive method, the property lines of abutting or riparian owners remain the same as before, among them the following: Lynch v. Allen, 20 N. C. 190, 32 Am. Dec. 671; Marks v. Sambrano, 170 S. W. 546; Cooley v. Golden, 117 Mo. 33, 23 S. W. 100, 21 L. R. A. 300; Rees v. McDaniel, 115 Mo. 145, 21 S. W. 913; Wallace v. Driver, 61 Ark. 429, 33 S. W. 641, 31 L. R. A. 317; Fowler v. Wood, 73 Kan. 511, 85 Pac. 763, 6 L. R. A. (N. S.) 162 et seq., 117 Am. St. Rep. 534; Stockley v. Cissna, 119 Tenn. 135, 104 S. W. 792; Missouri v. Nebraska, 196 U. S. 23, 25 Sup. Ct. 155, 49 L. Ed. 372; 29 Cyc. 353.

While it is true that no authorities upon this question were cited in the brief of either party, this court was aware of and considered the line of cases now presented by appellee before announcing its former opinion, but concluded that the principle therein applied did not rule the fact conditions in this instance. Appellee's inference that our summary of the facts under which the change in beds occurred showed it to have been avulsive may not be unjustified from the language used; but nevertheless that was not the premise from which our conclusion proceeded, because we then thought, as we still do, that the leaving of this old bed as unsubmerged land, susceptible of being surveyed as such, was gradually accomplished by the processes termed accretion or reliction, and that the record here so shows. We accordingly thus enlarge upon what was formerly, perhaps, an inadequate statement of how the actual change resulted: Although the main body of the river as a flowing stream changed channels during an overflow, as was recited in the original opinion, the undisputed proof likewise discloses that the abandoned bed did not become such all at once, nor did it suddenly emerge as dry land. Upon the other hand, all of the witnesses who testified about that matter, either from general reputation and the statements of old settlers, or upon personal knowledge, said that the water had left the horseshoe shaped bed of old river so slowly, gradually, and intermit-

tently that they had been able to fish in it from the time they were small boys until a few years before this trial; that at times even yet there were lakes and sloughs of water in there, and every time the river got up the water would still flow into it through the mouth of one of these old sloughs and out again in the same way when it fell; in a word, that emergence from the water and the filling up of the old bed by deposits of sediment was so gradual and imperceptible as to make it a proportionate accretion to the adjoining lands upon both sides.

In these circumstances, while some of the authorities now cited by appellee appear to hold a contrary view, we think those referred to in our first opinion, upon better reasoning and stronger considerations, support the conclusion there reached, and feel constrained to adhere to it. In doing so, since a wealth of legal learning has illuminated the discussion of this subject in the cases referred to, conscious of inability to add anything, we have felt it unnecessary to write more, contenting ourselves with mention of the following additional authorities: Bigelow v. Hoover, 85 Iowa, 161, 52 N. W. 125, par. 2, 39 Am. St. Rep. 296; Buse v. Russell, 86 Mo. 209; Benson v. Morrow, 61 Mo. 345; Minton v. Steele, 125 Mo. 181, 28 S. W. 746; Ruling Case Law, vol. 1, pp. 228 and 231, pars. 3 and 5.

As his second ground for rehearing, appellee insists that we erred in holding the judgment should be reversed for failure to make the owners of abutting lands parties, because no such error, if error it was, had been assigned, nor was it fundamental. It may be that the answer of appellant, from which the inference as to there being other claimants of the land involved was taken, did not sufficiently set up the facts as to the ownership of the abutting lands, including the names of the claimants and the nature of their claims, to justify this court in reversing the trial court's judgment because they were not made parties to this action. It becomes unnecessary to decide the matter, however, since the view taken upon the other question discussed necessitates a rendition anyway. The motion for rehearing has been accordingly overruled.

Overruled.