NAYLOR, by Guardian, v. Cox, *Appellant*.

Division Two, February 14, 1893.

1. **Practice**: REVIEW ON APPEAL: ESTOPPEL. Where in ejectment the only issue raised in the trial court is whether the land in controversy was an accretion to plaintiff's or defendant's land, defendant will not be heard to claim on appeal that the land ought to be equally divided between them.

Naylor v. Cox.

2. ——: MOTION FOR NEW TRIAL: ESTOPPEL. Nor can such question be raised for the first time in the motion for a new trial.

3. **Land**: RIPARIAN OWNER: ACCRETIONS. Where, after an original survey of land on a river has been made, part of the same is washed away and afterwards new land re-forms within the limits of such survey, such land does not necessarily belong to the owner of the survey. If such remade land consists of accretions to the land of another, the latter may claim it although it extended beyond his lines and into the survey so partly washed away.

4. **Practice**: INSTRUCTIONS. It is not error to refuse instructions where others covering the same ground have already been given.

*Appeal from Howard Circuit Court.* — HON. J. A. HOCKADAY, Judge.

AFFIRMED.

*John Cosgrove* and *J. H. Johnston* for appellant.

(1) The newly formed land should have been divided between the owners. *Benson v. Morrow*, 61 Mo. 355; *Lanne v. Buse*, 70 Mo. 463; *St. Louis v. Lemp*, 93 Mo. 477. (2) The trial court erred in refusing to give instructions 8 and 9 asked by defendant. If the land in controversy commenced to form in the Missouri river and within the original numbers of the survey of section 4, township 48, range 15 and had since said survey washed away and again re-formed within the original boundaries of said survey, then it was the property of the defendant. *Buse v. Russell*, 86 Mo. 209; *St. Louis v. Rutz*, 138 U. S. 226; *Minley v. Norton*, 100 N. Y. 424. (3) The court should have given instruction number 7 for defendant and should have refused number 3 given for plaintiff.

*S. C. Major* and *Draffen & Williams* for respondent.

(1) It is too late for appellant to complain that the trial court ought to have ruled that the land between

the island and main shore should have been divided equally. *Tetherow v. Railroad*, 98 Mo. 74; *Drey v. Doyle*, 99 Mo. 459; *Walker v. Owen*, 79 Mo. 563; *Bank v. Armstrong*, 92 Mo. 265. (2) Nor could such question be injected into the case by motion for a new trial. *Nall v. Railroad*, 97 Mo. 68. (3) But even if the principle contended for is properly before the court, there is no ground for reversal on that score. *Buse v. Russell*, 86 Mo. 209; *Benson v. Morrow*, 61 Mo. 345; *City v. Lemp*, 93 Mo. 477. (4) The title to lands formed by accretion is determined by the laws of the state in which the land is situated. *Barney v. Keokuk*, 94 U. S. 324; *St. Louis v. Rutz*, 138 U. S. 226. In this state "the proprietor of land on the banks of the Missouri river does not own *ad filum aquæ*, but only to the water's edge, though undoubtedly still entitled to whatever increment may be added to his land." *Benson v. Morrow*, 61 Mo. 345; Gould on Waters, [2 Ed.] sec. 73. There was no error in the refusal of instructions numbered 8 and 9 asked by defendant. *Buse v. Russell*, 86 Mo. 209; *Wells v. Bailey*, 4 N. E. Rep. 841; Gould on Waters [2 Ed.] p. 310; *Nebraska v. Iowa*, U. S. Sup. Ct. Rep. of April, 1892, p. 100. Defendant's seventh instruction was properly refused, and plaintiff's third and fourth were properly given.

GANTT, P. J.—This is an action of ejectment instituted in the circuit court of Howard county, Missouri, for the following described land: "Beginning at a point in the slough twelve chains east of the line between sections 25 and 26 of township 49, of range 16, and running thence south seventy-nine degrees east down said slough thirty-five chains; thence south thirty-one chains; thence west forty chains; thence north thirty-seven and fifty hundredths chains to a slough; thence south seventy-nine degrees east twelve

and twenty-five hundredths chains to the beginning.''
The answer was a general denial.

The plaintiff is the owner of an island known as
"Naylor's Island;" and the defendant has title to a
tract of land opposite said island on the north bank
of the river.   The land in controversy was formed after
the original survey by the government in 1817 between
the island and the tract on shore, now owned by the
defendant.   When the government survey was made,
the main channel of the river ran north of the island,
and between it and the land now owned by the defend-
ant.   There was only a slough, through which a body
of water ran, between the island and the river bank on
the south.   The island was surveyed in connection with
the land on the south side of the river, being placed in
sections 25, 26 and 27, township 49, range 16.   The
United States surveyors, in surveying the land from
the south, stopped on the north bank of the island as
it then existed, and ran around the island, and its
original shape as shown by the field notes is now
easily traced by the formation of the ground and the
growth of the timber.

The land now belonging to defendant was sur-
veyed with that on the north side of the river, and
is in section 4, township 48, range 15.   The space
occupied by the principal part of the land in contro-
versy was then the main channel of the Missouri
river, and between the southern boundary of the origi-
nal survey of section 4, township 48, range 15, and the
northern boundary of sections 25, 26 and 27 of
township 49, range 16.   The north bank of the river,
as it existed in 1817 washed away however and the
river for awhile encroached upon the land upon the
north bank, and ran further north than it did at
the time of the original survey.   The accretions subse-
quently formed now extend further north than the

bank of the river as it existed in 1817 as shown by the field notes.

The plaintiff's title to the island was conceded; and the defendant's ownership of the land claimed by him, on the north bank of the river, in section 4, township 48, range 15, was undisputed. It was not denied that the land in controversy was alluvion. The sole question tried below was as to whether or not the accretion was to the island or to the main land.

The plaintiff's evidence tended to show that, in 1844, the main current of the river turned south of the island, leaving a body of water however still running between the island and the north bank of the river, upon which the defendant's land is situated; that steamboats, sometimes, after this change of the river, went up the channel north of the island, but they generally passed up and down on the south side; that the main body of water north of the island was next to the north bank of the river or the Howard shore, and that the last stream of water that ran north of the island was next to the bank on the Howard county side and between the land in controversy and the tract owned by the defendant; that while this stream of water was between the land sued for and the tract owned by the defendant, there was no water between it and the island; that the original formation of the island could be plainly distinguished by the formation of the ground and the timber growing thereon; that from the island north, the timber gradually became smaller and smaller, until after proceeding some distance there was a low place or depression, which some of defendant's witnesses called a slough, and, proceeding from there north, the timber grew larger up to a certain elevated place in the land in controversy, which some of the witnesses called a "tow-head." The timber then grew smaller, going north, until the

slough was reached through which the water last ran. In this slough there was no timber. Its width was variously estimated from one hundred yards upwards, and the bottom of this slough was several feet lower than any other point in the made land. Its banks were well defined. This slough was immediately adjoining the north bank of the river and between the land in controversy and the tract belonging to defendant. The plaintiff's testimony showed that there was a steep bank at the north boundary of the slough, which was the old river bank, and that this slough formed the channel of the last body of water that ran north of the island; that the land was gradually made to the island as the water receded therefrom and ran further and further towards the north, until finally there was nothing but the slough, which was between the land sued for and the defendant's land. The slough finally filled up and the island and main land became connected.

The plaintiff's evidence further showed that the depression or south slough, as some of defendant's witnesses called it, did not connect with the river above the island, and had no outlet except to the river below the island, and that when there was water in it, it was on account of back water from below, or water left standing therein after an overflow. The plaintiff also showed that the defendant was in possession of the land in controversy, a part of which had at one time been in possession of the plaintiff's father or his tenants. He also proved the rents and profits and then rested.

The evidence upon defendant's part tended to prove that there were two sloughs between the island and the defendant's tract of land, one designated by the witnesses as the south slough, called by the plaintiff's witnesses a depression or low place in the land,

and the other, the north slough; that the former was between the land in controversy and defendant's land. In other words, that the land in controversy was between two sloughs and separated by one from the island, and by the other from the main land. There was also some evidence that the land began to form out in the river and not adjoining either the island or the main land. One of the plaintiff's witnesses on cross-examination stated that plaintiff's father built a roadway about a foot or a foot and a half high across the depression or south slough, about a half mile below the head of the island, to enable him to drive across the slough or depression, and that this helped to fill up the depression or slough.

The court at the plaintiff's instance gave instructions in substance as follows:

"1. That if the land in controversy was gradually added to, and formed against Naylor's island, and the water gradually receded from said island and ran next to the north shore, until finally there was only a slough between said island and the north shore, then the "made" land between the slough and the island became part of the island, and if the defendant was in possession of any part of the land so formed, the finding should be for the plaintiff as to the part of the land so in possession of the defendant.

"2. That if the defendant was in possession of the land sued for, and same was formed against and added to Naylor's island, and gradually extended from said island towards the main shore, and was not made to, or formed against the land on the main bank, the finding should be for the plaintiff.

"3. That if a sand bar was first formed against the north side of 'Naylor's island,' and gradually extended from said island towards the main shore, and filled up, making solid land, and that the land in controversy

was formed in that way against said island, and that the main body of water flowing north of said island ran next to the north bank, and between the land sued for and the north of said river, the said river's channel gradually changed and moved southwardly until it finally got on the south side of an island in said river known as 'Naylor Island,' and that as said river moved southwardly, soil and other substances were by action of the water of said river deposited at and against the land now owned by defendant, the court instructs you that said deposits at and against the said land now owned by defendant are accretions or 'made lands' and belong to the defendant.

"4. The court instructs the jury that owners of land bounded by the Missouri river are riparian proprietors or owners, and are obliged to sustain all damages done to their lands by the action of the waters of said river; and they are also entitled to all the benefits which may result by the deposits of soil on or against their lands by the waters of said river. These deposits are called accretions or 'made lands,' and, if you believe from the evidence in the case, that the land in controversy or any part of it, has been deposited at or against defendant's lands, by the natural action of the waters of said river, and that such deposits have added to defendant's lands, he is as much the owner of said accretions as if he had actually purchased the land from the government of the United States; plaintiff cannot recover any of said made land or accretions, and you should so find.

"5. If the jury find from the evidence that the land in controversy formed out in the Missouri river, and did not form by connecting with or accreting to either the 'Naylor Island' or the land on the north bank of said river, then, in that event, plaintiff cannot recover in this proceeding.

"6. Before the plaintiff can recover in this case, he must prove by a preponderance of the testimony that he is the owner of the land in controversy, and, unless he has done so to your satisfaction, you should find for the defendant."

The court refused to give the following instructions on the part of the defendant:

"3. The court instructs the jury that if they find and believe from the evidence in the case that the land claimed by the plaintiff in the case is land made by deposits of said river against and to land that formed the northern bank of said river at the time of the government survey of the same, then you must find your verdict for the defendant.

"4. If the jury believe from the evidence that any portion of the land claimed by plaintiff is included in the original survey made by authority of the United States government and described in defendant's deed, and that same, after said survey, was washed away by the waters of the Missouri river, and that after the washing away of said land the space included within said original survey was again filled up by the operation of the waters of the Missouri river, then you are instructed that said land so filled up within the said original government survey belongs to the defendant, and that all accretions thereto made by the action of the waters of said river likewise belong to the defendant."

"6. Before plaintiff can recover in this case he must prove by the preponderance of the testimony that the title of the land in controversy is in him, and that defendant, at the time of the commencement of said suit, was occupying the identical land described in the petition and accretions thereto.

"7. If you believe from the evidence that there is a slough along the northern boundary of the island known as 'Naylor Island,' and that plaintiff or his

tenants or predecessors has filled up said slough at the western end by putting brush and other substance into it, and that in consequence of such brush and other substances being placed therein, said slough has filled up until its bed at said western end is nearly or quite on a level with the surface of the land on each side thereof; then the court instructs the jury that the filling of said slough did not result from the natural action of the waters of the said Missouri river, and the lands on the north side of said slough did not accrete to plaintiff's lands, and he is not entitled to recover in this suit for any land on the north side of said slough, and your verdict must be for the defendant.

"8. If the jury believe from the evidence that the land in controvery commenced forming in the Missouri river between the Naylor island and the north bank of said river, and within the original boundary of the government survey, section 4, township 48, and range 15, and gradually grew and extended therefrom, then said land belongs to. the defendant, and your verdict should be for him.

"9. The court instructs the jury that it is admitted that the defendant is the owner of the southwest fractional quarter of section 4, township 48, range 15, and, if you believe from the evidence that after the survey thereof by the United States a portion of said fractional quarter was washed away by the action of the waters of the Missouri river, and that afterwards the land re-formed within said fractional quarter, and other land was added thereto, by the action of the waters of said river, then you are instructed that all of said re-formed land with said accretions and additions thereto belong to the defendant; and, if you further believe that the land described in plaintiff's petition is composed of such re-formed lands and the natural accretions thereto, then your verdict should be for the defendant."

The verdict was for plaintiff. Motion for new trial was duly made and overruled, and defendant appeals.

I. The assignments of error are confined to the propositions of law stated in the several instructions, as there are no other exceptions either to the pleadings or to any particle of evidence in the whole record.

It becomes apparent from a thorough examination of the record that the issue tried in the court below was simply, whether the land in controversy, which all the evidence shows was "made land," was an accretion to "Naylor Island," the property of plaintiff, or was an accretion to defendant's land in section 4, on the north bank of the Missouri river in Howard county, Missouri.

The instructions given on both sides were drawn with reference to such an issue only, and are in accord with the law of this state and the decisions of this court. *Buse v. Russell*, 86 Mo. 209; *Benson v. Morrow*, 61 Mo. 345; *St. Louis v. Lemp*, 93 Mo. 477.

The jury found the issues for plaintiff, upon competent evidence, and under such circumstances there is nothing left for an appellate court but to affirm the judgment unless there was error in refusing some of defendant's instructions.

II. The first point tendered by the brief of the learned counsel for appellant, to-wit, that the land formed between the island and the main shore should be divided equally between the owners of the island and the land opposite on the Howard county bank, cannot be sustained. This claim was not made either in the pleadings, evidence or instructions in the court below. Our jurisdiction is wholly appellate in this case and we cannot review questions that were not mooted in the trial court. The defendant should have given the circuit court an opportunity to pass upon that issue if he desired to raise it. That court was not called upon to instruct or rule upon it, and the defend-

ant, having accepted the gage of battle of his adversary, without attempting to assert any other claim, cannot now be heard to complain that he had other claims. *Walker v. Owen*, 79 Mo. 563; *Whetstone v. Shaw*, 70 Mo. 575; *Bank v. Armstrong*, 92 Mo. 265.

Nor can such a question be raised for the first time in a motion for new trial in the court below, or in the assignments of error and brief in this court. *Nall v. Railroad*, 97 Mo. 68.

III. There was no error in refusing instruction number 4 prayed by defendant. By that instruction the defendant sought to have the court declare that if the jury should find that after the survey of fractional section 4, township 48, range 15, whose south boundary was the Missouri river, by the United States government, a portion of said section bordering on said river was washed away by the Missouri river, and afterwards the land was reformed within the limits of said original survey of said section, then all of the land so formed within said boundaries became the property of the then owner of said section, even though it should consist of accretions to "Naylor Island." If it means this, then it is not a correct statement of the law. On the contrary, if after the original survey in 1817 a part of said fractional section 4 was washed away by the river and the main channel of the river covered the place where it originally stood for any considerable length of time, and afterwards accretions to the island began and gradually grew and extended north toward the north bank until they went beyond what was originally the southern or river boundary of said section 4; said accretions thus formed to the island belonged to the owner of the island, and not to the owner of the original fractional section 4.

As said in *Welles v. Bailey*, 55 Conn. 292, "All original lines submerged by the river have ceased to

exist; the river is itself a natural boundary, and every changing condition of the river in relation to adjoining lands is treated as a natural relation and is not affected in any manner by the relations of the river and the law at any former period." *Buse v. Russell*, 86 Mo. 209; *Nebraska v. Iowa*, 143 U. S. 359; 12 Sup. Ct. Rep. 396, and cases there cited.

But if the instruction was not intended to have this scope, but only to announce that if the accretion began within and accrued to the original survey *and not to the island*, then it was not error to refuse it as the court had already given instructions fully defining the rights of both plaintiff and defendant as riparian owners.

IV. The seventh instruction was properly refused. There were no such facts as those upon which it was predicated. The roadway that was thrown up did not in any sense obstruct the channel of the river. It consisted wholly of dirt that was already a part of the accretions to the island.

V. Neither was there any error in refusing instructions 8 and 9, asked by defendant. The jury had already been directed in instructions 1 and 2 for defendant that if the accretions were to defendant's land, plaintiff could not recover and by number 4 for defendant that if the land began to form out in the river and not against either plaintiff's island or defendant's main land, plaintiff could not recover, and were moreover directed that the burden was on plaintiff to prove the accretions were to his island before he could recover. There was nothing else in the facts of the case requiring instructions and to have given 8 and 9 would have simply confused issues otherwise plain and clear. The case was well tried and no error appearing the judgment is affirmed. All concur.