VOGELSMEIER v. PRENDERGAST, *Appellant.*

Division Two, February 2, 1897.

1. **Land:** EJECTMENT: JURISDICTION. Suits for the possession of land must be brought in the county in which the land is situated. (R. S. 1889, sec. 2011.)

2. ——: ——: ——. Land situated within the bed of the Missouri river (where such river divides St. Charles and St. Louis counties) and south of the main channel of the stream is in St. Louis county and a suit therefor is improperly brought in the circuit court of St. Charles county.

3. ——: NAVIGABLE STREAM: ISLAND. Where the channel of a navigable stream abruptly shifts from one side of an island to the other, the island does not thereby acquire title to the abandoned bed.

4. ——: ——: ISLAND: BOUNDARY. Where a navigable stream forms a boundary to land, as in the case of an island situated within it, the owner's land extends only to the water's edge, and where a part of the land is washed away the river still remains the boundary.

5. ——: ——: ——: ——. Such owner loses the land so washed away and can extend his boundaries only by gradual accretion or gradual reliction just as other riparian owners; he can not claim new made land which is not an accretion merely because it forms within the lines or area of his original survey.

*Appeal from St. Charles Circuit Court.*—Hon. E. M. Hughes, Judge.

Reversed and remanded.

*Orr, Christie & Bruce* for appellant.

(1) The circuit court of St. Charles county has no jurisdiction of a suit in ejectment, unless the land sued for is within the county of St. Charles. Even consent of the parties could not confer original jurisdiction. R. S. 1889, sec. 2011; *Field v. Maloney*, 78 Mo. 172. (2) A riparian owner is entitled to land that is gradually formed against his shore, or that is left exposed by the gradual recession of the water from his shore; and, on the other hand, he must suffer the loss of so much of his land as is washed away by the water's action. This rule applies as well to the owner of an island as to the owner of the main shore. *Benson v. Morrow*, 61 Mo. 345; *Campbell v. Laclede Gas Co.*, 84 Mo. 372; *Buse v. Russell*, 86 Mo. 209; *Naylor v. Cox*, 114 Mo. 232; *Rees v. McDaniel*, 115 Mo. 145; *Cooley v. Golden*, 117 Mo. 33; *Minton v. Steele*, 125 Mo. 181. (3) The owner of an island in a navigable stream whose land is partly washed away, is not entitled to other land newly formed thereafter within the area formerly occupied by that part of the island so washed away, unless the newly formed land be made by gradual accretion to his shore or be left exposed by the gradual recession of the water from his shore. Authorities, *supra*. See particularly, *Naylor v. Cox, supra*, p. 243. (4) New land formed in a navigable stream entirely apart from the main shore and entirely apart from the shore of any island, belongs to the state and not to any riparian proprietor or island owner. *Benson v. Morrow, supra; Cooley v. Golden, supra*. (5) If a river, by action which is not

imperceptible, but rather sudden and abrupt, entirely forsakes its channel and forms a new one, the boundary lines of the adjacent land remain unchanged, and riparian owners will not be entitled to the abandoned river bed. *Rees v. McDaniel, supra; Cooley v. Golden, supra; Nebraska v. Iowa*, 143 U. S. 359. (6) In an action of ejectment, the plaintiff must affirmatively establish his own right of possession. He can not recover possession by showing merely that the defendant is not entitled thereto. *Benson v. Morrow, supra; Buse v. Russell, supra; Collins v. Brannin*, 1 Mo. 540; *Buxton v. Carter*, 11 Mo. 481; *Robbins v. Eckler*, 36 Mo. 495; *Large v. Fisher*, 49 Mo. 307; *Foster v. Evans*, 51 Mo. 39; *Cape Girardeau Road Co. v. Renfroe*, 58 Mo. 265.

*Wm. F. Broadhead* and *Louis H. Breker* for respondent.

(1) The middle of the main channel of the Missouri river has been, since 1813, certainly since 1825, the boundary line between the counties of St. Louis and St. Charles. Territorial Laws (Dec. 31, 1813), ch. 99, p. 293; Laws of 1825, sec. 13, p. 500; Laws (statutes) of 1825, vol. 1, secs. 1 and 2, p. 231. (2) It is only by gradual reliction from, or accretion to, its shores, that a river is changed so as to work a change of boundaries, where the middle of the main channel constitutes a boundary; but if the change in the main channel is sudden, from an accidental, violent, direct cause, or if the change is radical and complete, although gradual and in no sense sudden, taking months or years, as by a cut-off, or change from one side of an island to the other, the boundary remains in the middle of the old channel, and the jurisdiction is not affected. *Missouri v. Kentucky*, 11 Wal. 395; *Nebraska v. Iowa*,

143 U. S. 359; Gould on Waters, sec. 159; *Bouvier v. Stricklett*, 59 N. W. Rep. 104; *Willey v. Lewis* (Ohio), 28 Weekly Law Bulletin, 104; *Cooley v. Golden*, 117 Mo. 33; *Rees v. McDaniel*, 115 Mo. 145; *St. Louis v. Rutz*, 138 U. S. 245. (3) When a well defined slough intervenes and remains between the main shore and the newly made, re-formed, or relicted land, the riparian owner is cut off, and confined to his old boundary line. *Fulmore v. Jennings*, 21 Pac. Rep. (Cal.) 536. *Buse v. Russell*, 86 Mo. 209; *Cooley v. Golden*, 117 Mo. 33; *Naylor v. Cox*, 114 Mo. 232; *Cox v. Arnold*, 31 S. W. Rep. 592. (4) When an island or other land upon a navigable stream is washed away and subsequently re-formed within the original boundaries, such re-formed land belongs to the original owner, together with its accretions, unless re-formed by accretion to the land of another. *St. Louis v. Rutz*, 138 U. S. 226; *Mulry v. Norton*, 100 N. Y. 424; *Minton v. Steel*, 125 Mo. 181; *Crandall v. Allen*, 118 Mo. 403; *Buse v. Russell*, 86 Mo. 209. (5) When an island in a navigable stream, which has been surveyed and entered, is washed away in part, and its place occupied for a time by the river, and subsequently the river abandons its bed, leaving re-formed land within the boundaries of the original entry, which becomes attached to that portion never washed away, by the gradual filling up of the abandoned bed, to and against that which remained, thus forming a connected body of land, then the owner of the original title is the owner of the re-formed land and its accretions, unless first attached as accretions to the land of another. Authorities cited in last point.

GANTT, P. J.—This is an action of ejectment for certain lands as accretions to island 94, or Holmes Island, as originally surveyed and patented by the United States to Andrew Wilson.

Plaintiff deduces title by *mesne* conveyances from Andrew Wilson.

Throughout the chain of title the deeds call for "206.84 acres more or less, all on an island in the Missouri river."

The land was granted to Andrew Wilson by the government October 1, 1840.

The island was situated in the Missouri river east of St. Charles, and between that city and the Chain of Rocks.

The relative position of the island to the north and south banks of the river and the main channel thereof at different periods can be best understood by reference to diagrams made with reference to the testimony of the old settlers who were witnesses, and to the surveys in evidence.

In the year 1820 the situation was substantially as shown in diagram 1.

Diagram 1

St Charles County

Holmes Island

Missouri River

South Bank of Missouri River

Weldring    Prendergast

The action of the river subsequently to 1820 had the effect of cutting away the St. Charles county shore above Holmes Island, and of making land gradually to the St. Louis county shore. At the same time the

island was being gradually washed away at its head, while accretions were being formed at its foot. Owing to this gradual action of the river's current, such changes occurred, that by the year 1858 the situation was substantially as shown in diagram 2.

The location of Holmes Island as it existed in 1820 is shown in diagram 2 by dotted lines. It will be observed that the location of the island was so changed between the years 1820 and 1858 that but a small portion of the area originally occupied by the island was occupied by it in the latter year. The main channel of the river occupied the greater part of such area, while a considerable part of it was occupied by sandbars, including part of the land in controversy, which sandbars were separated from the St. Louis county shore by an ordinary slough.

It seems to us that the evidence on both sides admits of but one construction as to the location of this land in 1858, and that is that at that time it was part of a sandbar on the south side of the main channel of

the Missouri river, and that it was connected with the St. Louis county shore either directly or was separated from it only by the long slough indicated on diagram number 2.

At that time the evidence all agrees that the main channel of the river was between this sandbar and Holmes Island.

The location remained practically the same until 1875, when a very marked change occurred in the course and location of the main channel of the river at the point in question.

So strong was the force of the current against Case Island, located just above Holmes Island, that Case Island was entirely washed away. The removal of Case Island left the St. Charles county shore above Holmes Island more exposed to the swift action of the current. The result was that in 1875 the river cut away about one hundred and fifty acres from the north side of Holmes Island and about fifty acres from the lower end thereof, leaving about one hundred acres. At the same time the sinuous and insatiable stream was swallowing at huge gulps the valuable lands on the St. Charles shore, and in that year completely shifted its channel from the south or St. Louis county side of Holmes Island to the north or St. Charles county side of said island. The river, having thus cut itself a new channel, entirely abandoned its old bed, which had existed at the head of Holmes Island and between the south shore thereof and St. Louis county on the south, as it was shown in diagram 2. The situation as it existed subsequently to 1876, and at the time of the insti-

tution of this suit, was substantially as shown in the following diagram 3:

Thus, after the change of 1875, the island, instead of being separated by the main channel of the river from the land sued for, as it had been before, *became connected with said land, the connection being formed by the abandoned river bed.*

The respondent's theory seems to be that he, being the owner of Holmes Island, is entitled to any land formed in any manner whatsoever within the limits of the area occupied by the island at the time of its original survey, notwithstanding the fact that the greater part of said area, subsequently to said survey, was occupied continuously for many years by the main channel of the river; nor does his claim stop here, for, in the present suit, he asserts title to land not within the limits of his original survey, on the ground, apparently, that it is attached to land lying within those limits.

The appellant's theory is that the owner of an island is bound by the rules of law which govern riparian owners generally; that on one hand, he loses so much of his land as is washed away by the river, and loses with it the title to the particular area formerly occupied by the land so washed away; and that, on the other hand, he gains such land as may be formed by accretion to his shore, and such land as may be left exposed by the gradual recession of water from his shore, including, of course, title to the area occupied for the time being by the land so newly formed or exposed.

Much evidence was given by respondent as to the width and depth of the slough separating appellant's farm from the land sued for, the purpose being to show want of title in appellant by showing that the bar outside of the slough was not formed directly against the shore.

The appellant has filed a printed abstract of the evidence. This abstract is conceded to be correct, but is supplemented by an additional abstract by respondent, containing some little portions of the testimony of Mr. Elbring, the surveyor, Mr. Etienne Tyon, and calling for the United States survey and plat, and the admission that defendant is in possession of the land.

From this abstract we glean the location of the main channel of the river for many years prior to 1875.

Mr. Tyon, the respondent's witness, said the main channel struck right against the head of the island; that above the island the channel was toward the St. Charles county shore, and that, in going down from St. Charles one had to look over the bar against the St. Louis county shore to see the head of the island.

Jno. H. Spinks, respondent's witness, testified that the channel of the river hugged close to the island

around the head and for a short distance along the south shore, before the change of 1875.

John Pallardy, respondent's witness, testified that before the change steamboats went down the river on the St. Charles county side above the island, and then cut square across the river close to the head of the island.

Louis Spinks, respondent's witness, testified that before the change the main river would come down on the St. Charles side and make a curve, rubbing against the head of the island and crossing over to the St. Louis county side and continue down that side to the Chain of Rocks. The Chain of Rocks was on the St. Louis county side about opposite the foot of the island.

Chas. Gates, respondent's witness, testified that before the change, steamboats going down the river would go down next to the St. Charles county side until they got to the island, and that they would then pass across the head of the island and a short way down by the south side of the island, and then they would cross over to the St. Louis county side.

Chas. P. Spinks and Louis Lorraine, both witnesses for respondent, gave similar testimony.

Chas. Spinks testified that from 1860 the main channel of the river ran outside or north of the bar which lay next to the St. Louis county shore. The land sued for is part of the bar in question. He also testified that this bar was in the shape of a horseshoe or half circle; that it started with nothing and ended in nothing, and that its width was about half a mile at the widest point.

*Second.* As to the time when the land sued for was formed:

Mr. Mareschal, respondent's witness, testified that he saw sandbars north of the long slough before 1845

opposite appellant's farm, and that the land sued for existed in the shape of a sandbar as far back as 1845.

Jno. H. Spinks, respondent's witness, testified that before the change of 1875 there was a sandbar on the St. Louis county shore where the land in controversy now is, and that *the main channel of the river then ran between this bar and the head of Holmes Island.*

These statements are corroborated by the witnesses who testified for appellant on this point.

Kollorn testified that he had known a bar to be where land sued for now is ever since 1865.

Corsely Black said he had known the bar to exist where the fields in controversy are since 1865.

G. Lajenesse testified that the land sued for was a part of certain sandbars which had been forming opposite appellant's place since 1850.

Kleeburg testified that in 1859 the bar extended out as far as the point where the land sued for now is.

In brief, the facts, as established by respondent's witnesses, are these: Holmes Island, as originally surveyed, was opposite appellant's land, but in course of years, by the action of the river, it acquired a new location about three fourths of a mile further down stream, and a small fraction only of the original island remained. As the island was gradually washed away at its upper end, the main channel of the river occupied the area so abandoned by the island and, in the course of time, bars pushed out from the St. Louis county shore, and at last occupied a large part of the identical area which, many years before, had been occupied by the island, and which had been included in the original survey of the island. The fields sued for are on these very bars which existed, as bars, while the main channel of the river ran between them and Holmes Island. The long slough, as shown in diagram 3, separated these bars, with the fields sued for, from the

St. Louis county shore and from appellant's farm. This slough, although a very long one, was generally dry except in high water and in wet seasons. This slough was not itself the Missouri river. Finally, in 1875, the river abandoned that portion of its bed lying between the fields sued for and the island, and so the island became united to the fields, the abandoned river bed acting as the connecting link.

At the conclusion of plaintiff's evidence the defendant moved the court to dismiss the case for want of jurisdiction because all the evidence showed the land was in St. Louis county when the suit was brought and not in St. Charles county where the action was commenced, which motion the court overruled and defendant excepted.

Defendant then interposed a demurrer to the evidence which was also overruled and defendant excepted.

The court gave the following instructions at instance of plaintiff:

"First. The court declares the law to be, that by the patent to Andrew Wilson, the deeds, judgments and other papers offered in evidence by the plaintiff, he has established title in himself to frl. section 14, frl. section 15, frl. section 22 and the east one half of northwest one quarter and the northeast frl. quarter of section 23, all on an island in the Missouri river known as Holmes Island, and all accretions thereto; and it appears from the evidence that the land in controversy, or some part of it, is situated within the boundaries of the original survey by the United States government, of the said above described sections and fractional sections, patented to Andrew Wilson; and if it further appears from the evidence that said land so patented to Wilson being upon the island aforesaid, was, subsequent to the survey and entry thereof,

washed away by the river, in whole or in part, including that portion of the original island where the land sued for is situated, and that said land so entered and washed away, re-formed as sandbars, disconnected with the main shore next to the land of defendant; that such sandbars gradually filled up and became higher, until they extended to and became connected with the land of defendant, but leaving a well defined slough between as indicated on the plat of Elbring, offered in evidence; and if it further appears that such sandbars and re-formed land so filled up, embrace the land in controversy, then the finding and judgment should be for the plaintiff.

"Second. The court declares the law to be, that if it appears from the evidence that the Missouri river washed away only a portion of said island, after its survey and entry, leaving a portion of the original island and survey, including in what was left, some portion of that entered by Wilson and described in the patent to him; and that the waters of the river covered the location of that portion so washed away, for a time and that afterward the waters receded from the location of that land so washed away, leaving land where the waters of the river had been, connected with the land not washed away; and if it further appears that the land so left by the river or the accretions thereto, if any, embraces the land in controversy, and that a well defined slough separated such re-formed land and accretions thereto, from the survey or grant belonging to the defendant and the accretions thereto, as indicated on the plat, then the finding and judgment must be for the plaintiff.

"Third. The court declares the law to be, that under the evidence in this case the middle of the main channel of the Missouri river, the boundary between the counties of St. Charles and St. Louis, was at the

time of the entry and survey of Holmes Island, upon which is situated the land in controversy, south and east of said island, and that said island was then in St. Charles county, and the nature of the subsequent changes in the location of the middle of the main channel of said river, shown in evidence, have not had the effect to change the boundary line between said counties to the north and west side of said island and land in controversy, but that the same has remained in St. Charles county.''

To which action of the court in giving the foregoing instructions on behalf of plaintiff, the defendant then and there at the time objected and excepted.

At defendant's request the court gave the following instructions:

"First.   The court declares the law to be, that if the land in controversy was formed on the south side (or St. Louis county side) of the main channel of the Missouri river, and has ever since remained on the south side of said main channel, then the court has no jurisdiction to try and determine this cause and the plaintiff's petition should be dismissed by the court for want of jurisdiction.

"Second.   The court declares the law to be, that the issue in this cause is whether or not plaintiff, at the time of instituting this suit, had the right of possession of the land in controversy; and the right of defendant to have such possession is not in issue; and unless plaintiff has proved by a preponderance of the evidence that he has the right of possession of the land in controversy, he can not recover in this action.

"Third.   The court declares the law to be, that if that part of Holmes Island or the area of land originally granted by the government to plaintiff's grantors, which was located in the Missouri river immediately opposite or north of the land owned by defendant in

St. Louis county, was between 1820 and 1875 washed away by the sudden and abrupt action of the current of the river; and that said area was at once occupied by the main channel of the river and formed a part of the bed of the main channel of the river, and that thereafter new made land formed within such area by accretions to defendant's land on the St. Louis county shore, and that said accretions extended northwardly by gradual accretion toward the main channel of the river, and that thereby the land in dispute was formed as a part of said accretion to defendant's land; and that the land in dispute so formed was in existence while the main channel of the Missouri river ran between said land and that part of Holmes Island which had not been washed away (known as plaintiff's farm) then the land in dispute was in St. Louis county, and was not the property of plaintiff and plaintiff can not recover.''

The defendant requested the court to grant the following instructions, which the court refused to do:

"Fourth. The court declares the law to be, that if defendant was the owner of an island in the Missouri river, the water's edge was at all times his boundary line, and if a part of said island was washed away by the gradual action of the current of the river, and the area of that portion of the island so washed away afterward became a part of the main channel of the river and so remained for any considerable number of years, then plaintiff lost all title to soil beneath the river which occupied such an area and could not again become entitled to the soil occupying such area, unless the same was formed by accretion to the shore of the island or was exposed by recession of the water from the island shore.

"Fifth. The court declares the law to be, that if the court sitting as a jury finds from the evidence that

that part of Holmes Island or the area of land origi-
nally granted by the government to plaintiff's grantors,
which was located in the Missouri river immediately
opposite or north of the land owned by defendant in
St. Louis county, was, between 1820 and 1875, washed
by the action of the current of the river; and that said
area formed a part of the bed of the main channel of
the river for any considerable time, and that thereafter
new made land formed within such area by the forma-
tion of a new island in the Missouri river, but on the
south side of the main channel, and adjacent to de-
fendant's land or the St. Louis county shore and that
said island extended northwardly by gradual accretion
toward the main channel of the river, and that thereby
the land in dispute was formed as a part of said newly
formed island; and that the land in dispute so formed
was in existence and has since so remained, while the
main channel of the Missouri river ran between said land
and that part of Holmes Island which had not been
washed away, then the land in dispute was in St.
Louis county at the time of its formation and is now
and this court has no jurisdiction to try this cause."

To which action of the court in refusing to grant
the foregoing instructions defendant then and there at
the time duly excepted.

I.    The first assignment of error is the refusal of
the circuit court to sustain the plea to the jurisdiction.

By our laws (sec. 2011, R. S. 1889), "suits for the
possession of real estate, or whereby title thereto may
be affected, shall be brought in the county within
which such real estate, or some part thereof, is situ-
ate."

If, then, it appeared that the land for the posses-
sion of which this suit was brought was situated in St.
Louis county it was wrongfully brought in St. Charles
county and, the right to try the case in the St. Charles

circuit court having been challenged, the plea to the jurisdiction should have been sustained.

If the evidence was conflicting upon this point we should regard the finding of the court as conclusive upon us, as the action is one at law, but we have been unable to find any evidence in the printed abstract upon either side tending to prove that the main channel of the Missouri river was ever at any period south of the land in suit. We have not overlooked the labored argument of respondent's counsel to show that the south bank of the river was at one time coterminous with the south bank of the long slough, and that "either in 1851, or about 1856 or 1857 or between 1851 and 1857," "a change in the main channel was brought about by a violent, immediate cause, having a direct, sudden, and immediate effect." In other words, counsel labors to show that the sinking of a boat near the bridge and the consequent forming a towhead and the gradual change of the current from the St. Louis county side to the St. Charles side was an avulsion and not a gradual and imperceptible change of the channel.

It is sufficient to say there is no evidence of any such sudden and violent change in the channel from 1820 to 1875. Charles Spinks, plaintiff's witness, testified that "ever since the towhead formed there has been a bar putting out from the St. Louis county side." "From 1860 the main channel of the river went outside (or north) of these bars." The land in controversy without doubt is a part of this bar. Granting that the long slough was south of this land, still it must be conceded it is neither the river nor the main channel.

We think that the learned circuit judge must have misapprehended the evidence on this part because as it now appears in this record we do not think it debatable that the main channel of the river has all the time

since 1860 been north of the bars and the land in controversy, and this being true we think the court erred in not sustaining the plea to the jurisdiction as the land was and is in St. Louis county according to the evidence before us.

II.    The court was amply justified by the evidence in finding that in 1875 there was an abrupt and violent change of the river from its old bed and the making of a new channel, and that this change did not effect a change of the boundary between the two counties. The abandoned river bed lies between the island and the land in suit.    This old bed still bounded plaintiff's land on the island and the sudden avulsion did not extend plaintiff's bounds beyond the north edge of that abandoned bed.    *Rees v. McDaniel*, 115 Mo. 145; *Cooley v. Golden*, 117 Mo. 33; *Naylor v. Cox*, 114 Mo. 232.

III.    The first instruction for plaintiff is clearly erroneous.    It asserts the doctrine that if one own the land in a given survey, being an island in a navigable river, and a portion of said survey is entirely washed away, giving place to the channel of the river, and at any subsequent period new land be formed within the area of the original survey and away from the main shore or the remainder of the survey and not as an accretion thereto such new made land will become the property of the owner of the island.    Such is not the law in this state.    When a navigable stream forms a boundary as in case of this island his line extends to the water's edge and not to the center of the stream. If part be washed away the river still remains his boundary.    He loses the land that is washed away.    He can only extend his boundaries by gradual accretion or gradual reliction just as other riparian owners.    He can not claim new made land which is not an accretion

merely because it forms within the lines or area of his original survey. This must now be considered settled in this state. *Naylor v. Cox*, 114 Mo. 232; *Cooley v. Golden*, 117 Mo. 33.

IV.    The second instruction is based upon a theory wholly at variance with plaintiff's evidence. The plaintiff's testimony made out a case of sudden avulsion and change of the channel and not a gradual reliction.

The same may be said of the third instruction for plaintiff because, for the reasons given in paragraph 1 of this opinion, there was a change in the current or main channel of the river and all the land in controversy was formed south of that channel and consequently became a part of St. Louis county.

The court also erred in refusing the fourth and fifth instructions prayed by defendant. They were founded upon the testimony and evidence in the case and announce correct legal principles as often decided by this court.

For these reasons the judgment is reversed and the cause remanded to be proceeded with in accordance with the views herein expressed.    SHERWOOD and BURGESS, JJ., concur.