WIDDICOMBE v. ROSEMILLER et al. (two cases).

SAME v. MURPHY et al.

(Circuit Court, W. D. Missouri, C. D. October 21, 1902.)

Nos. 2,253, 2,254, 2,255.

1. RIPARIAN RIGHTS—ACCRETION AND RELICTION—LATERAL LIMITS OF RIGHT.
   A riparian owner on a river is entitled to the land made by accretion or reliction in front of his property, and contiguous thereto, according to his shore line. His right cannot be extended laterally so as to exclude other riparian owners above or below him from access to the river.

2. SAME—LAW GOVERNING—ISLANDS.
   An island in a navigable river, which had been surveyed prior to the admission of the state, so long as it remained undisposed of by the

United States, was governed by the rules of the common law with respect to riparian rights and the effect of erosion or submergence, and not by the law of the state.

8. SAME—EFFECT OF SUBMERGENCE OF ISLAND—RELICTION.

Island No. 42 in the Missouri river, within the present state of Missouri, was surveyed by the United States in 1820, and then contained about 50 acres. Subsequently during floods it was submerged, and a portion of the surface was washed away; but on the subsidence of the waters a portion of it reappeared, and at no time was it washed away to the level of the bed of the river, a channel remaining between the island and the west bank of the river. About 1880 the river cut a new channel, commencing above the island, and returning to the old channel below it, making a curve to the eastward, which inclosed about 1,100 acres, and leaving the old channel and the island dry. Thereafter plaintiff entered the island as public land, and received a patent therefor according to the original survey. Under the law of Missouri the title of riparian owners on a navigable stream extends only to the water line. *Held*, that the title of the United States to the island was not lost by the erosion or submergence, and that, by its conveyance after it reappeared on the reliction of the waters, plaintiff took title thereto with the additions made by alluvion and accretion.

4. SAME—ACCRETION.

A considerable depression existed between the island and the former west bank of the river, where the channel had originally been. *Held*, that the center of such channel constituted the new boundary between the island site and the tract of land lying on such bank, and the new lands to the eastward, reaching to the new channel, were accretions to the island; not extending, however, farther to the north or south than the extremities of the island according to the original survey.

**At Law.   Actions of ejectment.**

These are three separate actions of ejectment for the recovery of Island No. 42 in the Missouri river, located in section 19, township 46, range 13 W. of the fifth P. M., containing 48.62 acres, according to the United States survey thereof made in 1820. The defendants owned the land bordering on the west bank of the river in range 14; Fred Rosemiller owning the quarter section farthest north; the defendant Henry G. Rosemiller, the quarter section next south; and the defendant Hugh M. Murphy, the quarter section farthest south. The quarter section owned by Henry G. Rosemiller lay immediately west of the island. The river boundary line thereof at the time of the survey of the island was about 200 yards west of the island. Between 1870 and 1880 the channel of the river began to change about a mile and a half north of the Fred Rosemiller tract, over to the Boone county side, and, by process of erosion, cut into the Boone county shore until its course turned eastward, and then southeast, and then southwest, until it re-entered the old channel of the river, south of the Hugh M. Murphy tract, forming what is known as "Eureka Bend"; making a complete crescent, the apex of which was a mile and a half east of the original channel; thus forming in this crescent a body of land containing about 1,100 acres, the whole of which the plaintiff claims as an accretion to Island No. 42; the defendants claiming it as an accretion to their lands, respectively. The plaintiff entered this island in 1896, and obtained from the government therefor a patent. The defendants' contention, inter alia, is that this island was washed away by the floods of the Missouri river between 1870 and 1880, so that the channel of the river ran over it for such a length of time that it should be regarded as a part of the bed of the river, and that the reappearance of the dry land therein after the change in the channel of the river became the property of the state, and the alluvion forming over the same, being an accretion from the shore line, belonged to the riparian proprietors; the contention of the plaintiff being that the island, as such, was never obliterated, but a considerable integral part thereof remained intact, and, though overflowed in times of great floods in the river, on the retrocession of the high waters a

large portion of the island reappeared as dry land, and that the accreted lands belonged to the owner of the island. A jury being waived, the cause was submitted to the court, which made a special finding of facts, which is too voluminous for publication. Sufficient of them will appear in the following opinion for a proper understanding of the facts found, and the principles of law applied thereto.

John Cosgrove, W. S. Pope, C. D. Corum, and John Montgomery, Jr., for plaintiff.

Moore & Williams and W. M. Williams, for defendants Rosemiller and others.

Silver & Brown and Eli Penter, for defendants Murphy and others.

PHILIPS, District Judge (after stating the facts as above). As both parties to this controversy claim the lands between the original surveys and the present river front as accretions, and the court being of the opinion that said new lands outside of Island No. 42 in front of the Fred Rosemiller tract and the Hugh M. Murphy tract are accretions thereto, and the only claim asserted thereto by the plaintiff is that they are an accretion to Island No. 42, the issues as between the plaintiff and Fred Rosemiller and Hugh M. Murphy must be for the defendants as to said accreted lands. The rule of law, as I understand it, is aptly expressed by Chief Justice Ruger in Mulry v. Norton, 100 N. Y. 426, 3 N. E. 581, 53 Am. Rep. 206, the substance of which is that the riparian proprietor is entitled to the lands made by accretion or reliction in front of his property, and contiguous thereto, according to his shore line:

"However such accretions may be commenced or continued, the right of one owner of uplands to follow and appropriate them ceases when the formation passes laterally the line of his coterminous neighbor. A littoral proprietor, like a riparian proprietor, has a right to the water frontage belonging by nature to his land, although the only practical advantage of it may consist in the access thereby afforded him to the water for the purpose of using the right of navigation. This right is his, only, and exists by virtue and respect of riparian proprietorship."

This doctrine is approved by Mr. Justice Blatchford in St. Louis v. Rutz, 138 U. S. 226, 250, 11 Sup. Ct. 337, 346, 34 L. Ed. 941, as follows:

"The right of accretion to an island in the river cannot be extended lengthwise of the river, so as to exclude the riparian proprietors above and below such island from access to the river as such riparian proprietors."

The real controversy in this case arises between the plaintiff and Henry Rosemiller. The contention of the plaintiff is that he is not only entitled to recover, in any event, 48.62 acres embraced in the original survey of Island No. 42, but also all the land in front of the Rosemiller tract to the present western bank of the Missouri river, as an accretion to the island. The defendant contends that said island at some time after the survey of 1820 was entirely swept away by floods or the process of erosion, so that for a considerable length of time the situs of the island was submerged and became a part of the bed of the river, and that, even if the dry land did at any time thereafter appear within the territory of Island No. 42, the plaintiff cannot claim it, nor any accretions thereto, as it became the property of the state,

subject, however, to the acquisition by accretion to the lands of Henry Rosemiller, the riparian proprietor.

Without stopping here to discuss what the court finds the facts to be respecting the effect of the force of the waters in the fluctuations of the channel of the Missouri river on this island, it is to be conceded to the contention of the defendants that Judge Gantt, speaking for division 2 of the supreme court of this state, in Vogelsmeier v. Prendergast, 137 Mo. 271, 39 S. W. 83, has ruled that as to an island surveyed in a navigable river, when the surface thereof is entirely washed away, giving place to the channel of the river, and at a subsequent period new land is formed within the area of the original survey, the owner of the island does not become the owner of the new dry land, which is not an accretion, merely because it forms in the area of its original survey. I feel constrained to challenge the applicability of this ruling to the facts of this case. It was ever the settled common law of England that the seas and all navigable tributaries in which the tide ebbed and flowed, and all beneath and in them of natural creation, belonged to the crown, and that all grants of land bordering on tide water extended only to the high-tide margin. This doctrine of the common law was imported into this country, and made applicable to our inland navigable streams, established or recognized as such by congress. Accordingly the congress of the United States has provided that the navigable rivers or streams in the territory of the United States in which lands are offered for sale should be deemed to be and remain public highways. Hence Mr. Justice Clifford, in Railway Co. v. Schurmeir, 7 Wall. 272, 288, 289, 19 L. Ed. 74, said:

"Viewed in the light of these considerations, the court does not hesitate to decide that congress, in making the distinction between streams navigable and those not navigable, intended to provide that the common-law rules of riparian ownership should apply to lands bordering on the latter, but that the title to lands bordering on navigable streams should stop at the stream, and that all such streams should be deemed to be and remain public highways."

These reservations and common-law rules were made applicable to riparian proprietors to whom concessions of the public land were made by the government. The settled doctrine of this state is that such riparian proprietor does not own to the main channel of the river, but only to the water's edge. Benson v. Morrow, 61 Mo. 347; Naylor v. Cox, 114 Mo. 232, 21 S. W. 589; Rees v. McDaniel, 115 Mo. 145, 21 S. W. 913; Cooley v. Golden, 117 Mo. 33, 23 S. W. 100, 21 L. R. A. 300. This, being the established rule of property in this state, must be recognized by the federal courts in matters of controversy respecting titles to land granted by the government, bordering on the river.

Island No. 42, in question, was surveyed by the general government, and thus appropriated and reserved by it, in 1820, before the admission of the state into the Union. It and the control of the river never passed to the state under the act of admission. It continued to be the property of the United States until it was patented in 1896 to this plaintiff. While it was the property of the United States, it held it subject alone to the recognized laws and rules of the United States. In the absence of express legislation by congress, the rules of the

common law applied to its ownership of this island; and, as the plaintiff obtained the patent to this island in 1896, this action should be viewed as if the government itself at the time of the grant had found the defendant on the survey of Island No. 42, and had brought an action to evict him. While the common law recognized that the proprietorship of lands might be lost by erosion or submergence, as said by Chief Justice Ruger in Mulry v. Norton, 100 N. Y. 426, 3 N. E. 581, 53 Am. St. Rep. 206:

"It is not, however, every disappearance of land by erosion or submergence that destroys the title of the true owner, or enables another to acquire it, for the erosion must be accompanied by a transportation of the land beyond the owner's boundary to effect that result, or the submergence followed by such lapse of time as will preclude the identity of the property from being established upon its reliction. Land lost by submergence may be regained by reliction, and its disappearance by erosion may be returned by accretion, upon which the ownership temporarily lost will be regained. * * * When the water disappears from the land, either by its gradual retirement therefrom, or the elevation of the land by avulsion or accretion, or even the exclusion of the water by artificial means, its proprietorship returns to the original riparian owner."

—Citing in support of this proposition the fundamental doctrine laid down by Sir Matthew Hale's De Jure Maris, that after—

"The reflex and recess of the sea the owner may have his land as before, if he can make it out where and what it was; for he cannot lose his propriety of the soil, though it be for a time become part of the sea, and within the admiralty jurisdiction while it so continued. * . * * As touching islands arising in the sea, or in the arms of creeks or havens thereof, the same rule holds, which is before observed touching acquests by the reliction or recess of the sea, or such arms or creeks thereof. Of common right, and prima facie it is true, they belong to the crown; but where the interest of such districtus maris, or arm of the sea, or creek or haven, doth in point of property belong to a subject, either by charter or prescription, the islands that happen within the precincts of such private propriety of a subject will belong to the subject according to the limits and extents of such propriety."

Reference is made in that opinion, as supporting the doctrine, to the learned opinion of Judge Wilson in the case of Morris v. Brooke, found in a note to this case in 53 Am. Rep. 215, in which the controversy arose over an island called "Wilson's Bar," created by alluvion upon land formerly contained within the boundaries of an island called "Little Tinnicum," but which at some time had been worn away by the waters. The court said:

"The right to the new island, and also to land gained by alluvion or dereliction, all of which are governed by the same principle, follows the right to the soil which is covered by the water. * * * Though the surface of the lower part of Little Tinnicum was destroyed by the force of the winds and the waves, and it was consequently overflowed by the water of the river, yet the owner did not lose the propriety of the remaining land covered by the water. If it was regained either by natural or artificial means, it continued to belong to the original proprietor. The earth deposited on it became his by the right of alluvion, and, of course, this island formed on it by such deposits became his. And though it probably has extended beyond the limits of the old island, the addition is plainly alluvion."

The supreme court of the United States, in St. Louis v. Rutz, supra, approved and recognized this doctrine of the common law in respect of islands. Because of the fact that the rule in the state

of Illinois extends the fee of the riparian proprietor to lands bordering on a navigable river to the main channel of the current, it is there held that when the land of such proprietor, by erosion or avulsion, is suddenly carried away by the waters of the river, but afterwards, by recess and alluvion deposits, new land is re-formed within the area of the grant, it becomes the property of the original owner, notwithstanding the channel of the river may have at one time run over its surface. The court said:

"It is laid down by all the authorities that, if an island or dry land forms upon that part of the bed of the river which is owned in fee by the riparian proprietor, the same is the property of such riparian proprietor. He retains the title to the land previously owned by him, with the new deposits thereon."

The rule is otherwise in the state of Missouri in respect of riparian proprietors who own the land bordering on a river, because their title only extends to the water's edge, and they have no fee in the bed of the river. But in case of an island in the river, surveyed and appropriated by the United States, and which never passed to the state of Missouri, in which the whole fee remains in the United States, the common-law rule must apply. In the case, supra, Arsenal Island, as originally surveyed, was in the Mississippi river, and on the Missouri side of the channel. The court said:

"Dry land which should again form on the site where the Arsenal Island existed when it was surveyed in 1863 would be the property of the city of St. Louis."

While there is conceded to the state the right to establish and maintain its own rules of property with respect to land ceded by the government to the state, and to the citizens thereof after their acquisition by the state or the private citizen, I deny the application of these local regulations and rules to the domain of the general government within navigable waters which existed at the time of the admission of the state into the Union, and over which the government had not surrendered its jurisdiction at the time of the abnormal convulsion of the waters of the Missouri river, when it ran over the surface of this island, and doubtless, for the time being, so submerged it as to admit of navigation above it. When the unusual waters receded, and the dry land appeared within the area of the survey, whether from retrocession of the waters, or the elevation of the land by alluvion deposits, under the common-law rule it was the same island, held by the same title. And the supreme court, in the case of St. Louis v. Rutz, supra, approved the doctrine of the court of appeals of New York in the Mulry-Norton Case, which maintained that, on its reappearance by alluvion or reliction within the line of the survey, the land above the water became the property neither of the state nor of any intruder by occupation. The court does not feel called upon to say what would be the relation of a private owner to an island in the Missouri river, which, after its grant by the United States, should be submerged so as to become the bed, lying beneath navigable waters, on its reappearance as dry land. When this plaintiff acquired the patent of the government to this island, the ruling made in the case of Vogelsmeier v. Prendergast, supra, had not been

made; and any physical change which had occurred on the surface of Island No. 42 was, according to the defendant's contention, 20 years or more prior to the issue of the patent.

The court is persuaded from the reliant testimony in pais, and from the physical facts disclosed by the surveys of the Missouri river commission, that this island was at no time entirely washed away to the level of the bed of the river; that the waters of the river in times of extraordinary floods may have swept over its surface, and probably washed away the vegetation on the top of the soil thereof, but a very considerable portion thereof reappeared on the retirement of the abnormal waters, between which and the shore on the west side thereof one of the channels of the river was clearly running in 1869; and that this body of land, containing from 15 to 20 acres, within the lines of the original survey, formed the nucleus of the adhesion by accretion of the lands thereto, not only equal to the amount and quantity of the original survey, but extending laterally beyond the surveyed lines.

The defendants, in their testimony, as do their counsel in their brief, lay particular stress on the fact, as testified to by the defendants, that between the early part of 1873, perhaps, and 1876, the river bank west of the island site, and especially so in front of the Murphy tract, was eaten into by the current of the river, so that a considerable portion thereof fell into the river. Between the island site and said river shore was a distance of about 200 yards, more or less. I confess that it is not apparent to my mind how it could be inferred from this fact that the island itself was thus eaten away and destroyed. If the trend of the work of erosion was to eat into the bank of the river on the west side, it showed that the force of the channel was in that direction, and away from the island, and thus to force the channel from the direction of where the present Eureka Bend channel enters the old channel south of the Murphy tract. It would rather seem to indicate that the pressure of the channel on the island was diminished by its increased force against the west shore of the river.

The physical fact remains, however, that between the surveys of the Missouri river commission in 1869 and 1879 the pressure was rather on the north shore (the Boone county side) of the river, and so great that, beginning at the Bruce farm, a mile and half north of the Fred Rosemiller tract, and a greater distance north of the island tract, the whole channel abandoned the locality of the defendants' lands and the island site, so as to form the Eureka Bend, with its apex nearly a mile and a half east. So the survey of the Missouri river commission in 1879 showed an almost unbroken body of land within the whole area of this bend, amounting to nearly 1,100 acres. And the character of the alluvion deposit, the vegetable growth, and the large size of the cottonwood trees, which, the evidence indubitably establishes, existed on this island between 1880 and 1890, satisfied the mind of the court that no such work of diminution by the channel of the river occurred in and about the island between 1873 and 1879 as to completely obliterate the island, as claimed by the defendants.

Conceding, as counsel for the defendants do, that this formation in front of the lands in question was an accretion, all in front of the Henry Rosemiller tract would inure to his benefit, if the island tract presented no obstacle. Finding, as the court does, from the evidence, that between the survey of the island tract and the original river-front line of the Henry Rosemiller tract there existed and continues to exist a considerable depression, some 10 feet lower than the surface of the island tract, it is a physical demonstration that this depression broke the continuity of the accretion to the Henry Rosemiller tract, and that it must, in the nature of things, have proceeded on the west side from the island site to the center of the depression. Judge Napton, in Benson v. Morrow, 61 Mo. 353, in discussing a kindred question, said:

"Suppose the channel of the river between an island and the mainland is left dry by the water, and entirely filled up with deposits of mud, and the island and mainland are at last one continuous tract of land; could the owner of either claim the entire tract? Certainly the newly formed land would belong to the United States, or it would be divided between the opposite owners, upon the common-law principle applicable to nonnavigable streams, of each going to the thread of the channel as it was before it was deserted by the water. In the event supposed, the river might be regarded as ceasing to be a navigable one pro hac vice, or, rather, as being converted, at the slough between the island and the shore, into a nonnavigable one. In any event, the owner of the shore could not claim both the alluvion and the island, nor, vice versa, could the owner of the island claim the tract on the bank, with its accessions by alluvion."

It may be conceded to the defendants that so much of the assertion of the learned judge as held that "the newly formed land would belong to the United States" has since been, in effect, overruled by the supreme court of the state; that such lands, unless they be the subject of accretion, would belong to the state. Otherwise the doctrine of this case has not been overruled, but repeatedly affirmed, by the supreme court.

The land sought to be recovered in the suit against Henry Rosemiller is so described as to embrace all the land lying in front of the original surveyed tract of Henry Rosemiller, at or near the present west river front of the river. This is predicated of the theory that all the lands included in this description outside of the island survey are accretions to the island. It is quite evident, however, from the location of the island as originally surveyed in section 19, that it does not cover the entire front of the Henry Rosemiller quarter section. It is apparent from the survey of the island that the southern point thereof is 48.04 chains north of the south line of section 19, which would make the southern point of the island 8 chains and 4 links north of the half-section line, so that the island tract does not cover the whole front of the Henry Rosemiller tract, by 8 chains and 4 links on the south. The only land in controversy, therefore, to which the plaintiff is entitled by way of accretion eastward from the island, is that which covers the front of the east side of the island as originally surveyed, while the only land which the plaintiff can claim by way of accretion to the island on the west side is that to the center of the depression between the island and Henry Rosemiller, of which

no survey has been furnished to the court, and therefore there can be no description given in the finding and judgment of the court. While the field notes of the survey of Island No. 42 show that the northern extremity of the island passes beyond the north section line of section 19 into section 18, which would bring it in front of the lower portion of the Fred Rosemiller tract, it is of such inconsiderable amount as, in the judgment of the court, not to warrant any interruption of the finding made in favor of said Fred Rosemiller as to the accreted land.

As the maps in evidence before the court enable it to give a description of the island tract, and the accretion in front thereof, judgment will go therefor for the plaintiff. But as the plaintiff has failed to furnish the court with any survey, or such evidence as would enable the court, with any reasonable accuracy, to ascertain the quantity and describe the boundary of the accreted land on the west side of the island, no judgment will be rendered therefor.